June WEST, Appellant,

v.

NORTHERN PUBLISHING COMPANY,
Appellee.

Marie TATE and Laura Johnson,
Appellants,

v.

NORTHERN PUBLISHING COMPANY,
Appellee.

Nos. 1262, 1263.

Supreme Court of Alaska.

Aug. 16, 1971.

C. R. Kennelly, Nome, for appellants.

Robert C. Erwin and David H. Thorsness, Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellee.

Before BONEY, C. J., and DIMOND, and RABINOWITZ, JJ.

OPINION

PER CURIAM.

Appellants, being the owners of two different taxi cab companies in the city of Nome, instituted separate libel actions against Northern Publishing Company, publisher of the Anchorage Daily News, for publication of an article which appeared in that paper on December 20, 1968.[1] The article in question was one of a six-part series on "Justice in the Bush," by Robert Zelnick, a reporter for the Anchorage Daily News. The allegedly libelous portion of the article reads in part as follows:

· The city of Nome is dominated economically, politically, and socially by the liquor merchants. It is the distribution center for legal and illegal liquor traffic throughout the northwest. Liquor interests control the city council. Some booze is furnished minors by cab companies, which in turn are owned by the liquor interests. Individual proprietors furnish liquor illegally on credit. They sell booze for money, ivory, and even federal food stamps.

Appellants claimed that this particular part of the article "placed responsibility for the illegal sale of liquor to minor children squarely" on them and by implication

1. The cases have been consolidated for purposes of this appeal.

asserted that the cab companies were guilty of criminal conduct.

After numerous pre-trial depositions had been taken, appellee Northern Publishing Company moved for summary judgments on the ground that the writing in question was a matter of public interest, and that under the standards of New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), appellants were required, under the First Amendment, to demonstrate that any defamatory statements contained in the article had been made with knowledge of their falsity or with reckless disregard of whether they were false or not. The superior court granted Northern Publishing Company summary judgments in both libel actions. In so doing, the trial court held that the questioned publication embodied comment upon a matter of legitimate public interest, and that the owners of the taxi cab companies were required to show that any defamatory falsehood alleged as libel was uttered with "knowledge that it was false or with reckless disregard of whether it was false or not." [2] We affirm.

At the time the summary judgments were rendered and until just recently, it remained undecided whether the New York Times articulation of the limitations upon state libel laws imposed by the constitutional guarantees of freedom of speech and of the press was applicable to a factual situation involving a private individual who is neither a public official nor a public figure but is involved in an event of public or general concern. In a line of cases commencing with New York Times, the Supreme Court has had occasion to hold that various state libel laws conflicted with the guarantees of freedom of speech and press provided for in the First Amendment to the United States Constitution. New York Times held that in a civil libel action by a public official against a newspaper the public official could not recover unless he proved by clear and convincing proof that an asserted defamatory falsehood was uttered with "knowledge that it was false or with reckless disregard of whether it was false or not." The New York Times standard was subsequently held to apply to "public figures." Curtis Publishing Company v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).[3]

After the instant appeals had been argued to this court, the Supreme Court of the United States was presented with the question as to whether "the New York Times' knowing or reckless falsity standard applies in a state civil libel action brought not by a 'public official' or a 'public figure' but by a private individual for a defamatory falsehood uttered * * * about the individual's involvement in an event of public or general interest."[4] In Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 52, 91 S.Ct. 1811, 1824, 29 L.Ed.2d 296 (1971), Justice Brennan, writing for a majority of the Supreme

---

2. New York Times Co. v. Sullivan, 376 U.S. 254, 280, 84 S.Ct. 710, 11 L.Ed.2d 686, 706 (1964).

In his conclusions of law, the trial judge decided in part:
   1. That the publication herein concerned a subject of legitimate public interest.
   2. That the publication herein comes within the legal standards announced in New York Times Co. v. Sullivan, 376 U.S. 254 [84 S.Ct. 710], 11 L.Ed. 2d 686 (1964) and Pearson v. Fairbanks Publishing Co., 413 P.2d 711 (Alaska 1966).
   * * * * *
   5. Plaintiffs have not presented any evidence nor shown that they could produce any evidence at the trial to indicate that the printing was malicious or was made with reckless disregard of the truth. The mere hope of questioning the credibility of the defendant's witnesses is not sufficient to resist summary judgment. [citation omitted]

3. For a concise outline and summary of the decisions of the Supreme Court of the United States in which the term "public figures" has been expansively construed, see Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 30, n. 1, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971).

4. Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 31, 91 S.Ct. 1811, 1814, 29 L.Ed. 2d 296 (1971).

Court, answered the question affirmatively, saying:

> We thus hold that a libel action, as here, by a private individual against a licensed radio station for a defamatory falsehood in a newscast relating to his involvement in an event of public or general concern may be sustained only upon clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false or not.

Under the Supremacy Clause, *Rosenbloom* is controlling, and we therefore hold that the superior court was correct in deciding that the owners of the taxi cab companies were required to meet the *New York Times* standard in order to recover against Northern Publishing Company.[5] We further hold that the trial court correctly determined that no genuine issue as to a material fact was raised under the *New York Times* criterion. Our study of the records pertaining to the summary judgments has led us to the conclusion "that none of the proofs, considered either singly or cumulatively, satisfies the constitutional standard with the convincing clarity necessary to raise a jury question whether the defamatory falsehoods were [published] with knowledge that they were false or with reckless disregard of whether they were false or not."[6]

The superior court's entry of summary judgments in favor of Northern Publishing Company in these consolidated cases is affirmed.

CONNOR and ERWIN, JJ., not participating.

---

5. It is apparent that the "Justice in the Bush" series of articles authored by Robert Zelnick concerned matters of public or general concern. Equally apparent is the conclusion that the alleged defamatory falsehood regarding illegal distribution of intoxicating beverages to minors in the city of Nome concerned a matter of public or general concern.

6. Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 55, 91 S.Ct. 1811, 1825, 29 L.Ed.2d 296 (1971).