Randall MISTROT, Plaintiff-Appellant,

v.

TRUE DETECTIVE PUBLISHING CORPORATION, Defendant-Appellee.

No. 72-2176

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 21, 1972.

* Rule 18, 5 Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, 5 Cir. 1970, 431 F.2d 409.

Brooks Taylor, Crestview, Fla., for plaintiff-appellant.

W. Spencer Mitchem, Pensacola, Fla., Ephraim London, Bonnie P. Winawer, New York City, for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

PER CURIAM:

This is an appeal from the granting of summary judgment for defendant-appellee, True Detective Publishing Corporation, in a diversity libel suit brought by plaintiff-appellant, Randall Mistrot. Appellee publishes Master Detective magazine and carried in its January, 1970 issue the alleged libel, an account of a recent double murder in Florida.[1]

The story was written by William T. Brannon, an experienced free-lance author who sold it to the magazine but who was not made a party to this suit. The story describes the murders as having been committed by Jimmy Lee Hart while appellant was present; it nowhere states that appellant actually took part in the murders.[2] Appellant admits that he aided Hart in disposing of the bodies and murder weapon, but he argues that "the story by innuendo, implication, and otherwise [falsely] stated that the plaintiff in fact helped Mr. Hart murder the two persons."[3]

The issue that faced the trial court and that is now before us is not complex. The parties stipulated that the sole issue in this case is whether the libel standard of New York Times Co. v. Sullivan, 1964, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, is applicable to the instant facts and allegations. The court below found that it was, and when appellant stipulated that he could not meet that standard, entered summary judgment for defendant. We agree that the instant case falls within the aegis of the Supreme Court's pronouncements regarding the constitutional limits of libel actions, and we affirm.

The *New York Times* case established for "public officials" a libel standard of " 'actual malice'—that is, [published] with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. at 279–280, 84 S.Ct. at 726, 11 L.Ed.2d at 706. That same standard now applies to "public figures," Curtis Publishing

---

1. The story was entitled, "Dead Witnesses Can't Put You in the Death House."

2. Hart had been convicted, but appellant had not been tried as an accomplice or as an accessory.

3. The story's theme is that Hart murdered the two victims in order to prevent one of them from testifying against him in another criminal case. The story does indeed place appellant with Hart prior to and during the time the murders were committed, but the principal specific references to appellant's "participation" are fairly characterized by appellee in its brief as follows:

   "That while Jimmy Hart was in the front seat of a car with gun drawn, he ordered Mistrot to drive, and Mistrot drove Hart and the two murder victims to a secluded spot; that Mistrot drank with Hart at that place; that Mistrot was present when Hart shot the two men; and that Hart thereafter threatened to kill Mistrot 'if he told anybody about what had happened.' "

Co. v. Butts, 1967, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094, and the Supreme Court has since extended the standard to events of general or public concern:

"[W]e think the time has come forthrightly to announce that the determinant whether the First Amendment applies to state libel actions is whether the utterance involved concerns an issue of public or general concern, albeit leaving the delineation of the reach of that term to future cases."

Rosenbloom v. Metromedia, Inc., 1971, 403 U.S. 29, 44–45, 91 S.Ct. 1811, 1820, 29 L.Ed.2d 296, 312.

In Rosenbloom v. Metromedia, Inc., the plaintiff was a private individual who had been *falsely* charged in a radio news broadcast about a police "antismut" campaign with involvement in the publishing of obscene literature. The Court disposed of his subsequent libel action as follows:

"We thus hold that a libel action, as here, by a private individual against a licensed radio station for a defamatory falsehood in a newscast relating to his *involvement* in an *event of public or general concern* may be sustained only upon clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false or not."

403 U.S. at 52, 91 S.Ct. at 1824, 29 L. Ed.2d at 316–317 [emphasis added].

■■■ Appellant seeks to distinguish the *Rosenbloom* case from his own, but

we are unable to see how the commission of a double murder is any less a matter "of public or general concern" than a police campaign against pornography. Similarly, we do not read Rosenbloom v. Metromedia, Inc. as limiting the protections of the First Amendment to "hot news" that is uttered moments after the event of public or general concern occurs. The freedom to publish, whatever its qualifications, is not subject to a stopwatch brake. Nor do we think that Rosenbloom v. Metromedia, Inc. requires greater investigation by the publisher into the accuracy of the story than that which here admittedly took place.[4] Lastly, we do not read Rosenbloom v. Metromedia, Inc. as limiting the First Amendment to "news accounts" that are purely informative and that are not prompted in the least by any desire to increase circulation by publishing news stories in a style calculated to amuse or astonish the audience. *See* Time, Inc. v. Hill, 1967, 385 U.S. 374, 395, 87 S.Ct. 534, 545, 17 L.Ed.2d 456, 471.

We thus conclude that this case is governed by Rosenbloom v. Metromedia, Inc., which established the standard a plaintiff must meet to prevail in a libel action. Even if the story is indeed false, appellant must meet that standard. Appellant here admits he cannot meet the standard, so we must conclude that the trial judge was correct in entering judgment against him. *See* Gertz v. Robert Welch, Inc., 7 Cir. 1972, 471 F.2d 801; Cerrito v. Time, Inc., 9 Cir. 1971, 449 F.2d 306.

Affirmed.

---

4. Appellee required the author to submit a list of the sources he had used in researching the story. The author listed specified official court records, other official records, newspaper accounts, and interviews with law enforcement personnel and with the murderer's cousin. Even if appellee's reliance on the statement of sources was negligent, appellant's case is not strengthened. "[N]egligence . . . is constitutionally insufficient to show the recklessness·that is required for a finding of actual malice." New York Times Co. v. Sullivan, *supra*, 376 U.S. at 288, 84 S.Ct. at 730, 11 L.Ed.2d at 711.