**ALPINE CONSTRUCTION COMPANY, an Illinois corporation, Plaintiff,**

**v.**

**Ovid DEMARIS and Lyle Stuart, Inc., a corporation, Defendants.**

**ALPINE CONSTRUCTION COMPANY, an Illinois corporation, Plaintiff,**

**v.**

**Ovid DEMARIS et al., Defendants.**

**Nos. 70 C 1027, 71 C 1221.**

United States District Court, N. D. Illinois, E. D.

Feb. 20, 1973.

Joseph C. Owens, Anne Gross Smoller, Chicago, Ill., for plaintiff.

Richard C. Valentine, Lord, Bissell & Brook, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

McGARR, District Judge.

This is an action for libel arising out of the publication of the book "Captive City". Defendant Demaris is the author of the book, while defendants Lyle Stuart and Simon & Schuster are the publishers of the hardbound and paperback editions, respectively, of the book. Jurisdiction is based upon diversity of citizenship.

The alleged libel appears in an appendix entitled "The Antisocial Register". The statement in issue is part of a biographical sketch of one Dominick Brancata, whose business is listed as Alpine Construction Company, the plaintiff. Brancata is stated to be a gangster whose livelihood consists of collecting tribute from Chicago gambling, prostitution, and vice operations. The above-mentioned statement relating Brancata to Alpine Construction is the sole reference to plaintiff in the book.

The complaint asserts the statement to be false and to have been published maliciously with the knowledge that it was false, or with a reckless disregard for the truth or a conscious indifference to the rights of the plaintiff, or in the exercise of ordinary diligence, the defendants could have ascertained that it was false.

Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Supporting memoranda and affidavits have been filed by both sides.

The initial issue is the applicable legal standards. As this is a diversity action, the libel law of the forum state is controlling as to non-constitutional issues. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). There are, however, substantial constitutional issues in this case which have recently been examined by the United States Supreme Court. In a series of cases beginning with New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court has considered the limitations upon state libel laws imposed by the constitutional guarantees of freedom of speech and of the press. New York Times held that in a civil libel action by a public figure against a newspaper, those guarantees required clear and convincing proof that a defamatory falsehood alleged as libel was uttered with "knowledge that it was false or with reckless disregard of whether it was false or not." New York Times at 280, 84 S.Ct. at 726. This rule has been extended to "public figures". Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). In the case of Rosenbloom v. Metromedia, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), this constitutional protection was further extended "to all discussion and communication involving matters of public or general concern, without regard to whether the persons involved are famous or anonymous". Rosenbloom at 44, 91 S.Ct. at 1820. The book in question, "Captive City", deals with the alleged crime syndicate control of the City of Chicago. More specifically, the alleged libel deals with syndicate involvement in legitimate business. This certainly is an area of "public or general concern". Accordingly, we hold that the New York Times standard through Rosenbloom is applicable to this case.

Muckraking is usually confined to areas of "public or general concern", since these areas are where reader interest and profit are found. And it may be that almost total freedom of comment without regard for truth is the price we must pay for untrammelled exchange on issues of general concern. It seems strange that to falsely accuse a man of homosexuality or stealing from his employer invokes stricter standards of accountability than to name him an associate of the crime syndicate. Such however is the clear holding of Rosenbloom, which decision it is the duty of this Court to accept and follow.

The issue, then, is whether plaintiff can demonstrate by clear and convincing evidence that defendants published the alleged libel with knowledge that it was false or with reckless disregard of whether it was false or not. In support of their motion for summary judgment, defendants have submitted the affidavit of Ovid Demaris, the author of the alleged libel. Demaris states that while doing research for this book during 1964, he became aware of one William Goldstein (also known as "Bill Gold"), who was a reputed syndicate gambling overseer on the North Side of the City of Chicago. Further research revealed that William Goldstein was a one-third owner of Alpine Construction Company since its formation, although it subsequently appears that his interest in the firm was purchased in the mid-1960's by Louis Auslander who, with his wife, is the present owner of Alpine. Demaris states that the basis for the Alpine reference in the book was an article in the April 20, 1964 edition of the Chicago Daily News relating to "hoodlum penetration into the city's business life". Particularly, the Daily News article stated:

"*Construction*

William Gold, syndicate gambling overseer, figured prominently in the 1952 'Big Nine' crime hearings in Chicago's City Council.

"Today he runs the Alpine Construction Co., 1233 S. Wabash, for the notorious Dominick Brancato (*sic.*)."

Demaris affidavit, p. 6

Demaris goes on to state that he was unaware of a retraction of the above-quoted story in the July 20, 1964 edition of the Chicago Daily News, and further states:

"Rather, my research (later confirmed by Mr. Auslander's deposition testimony) indicated strongly that Bill Gold was affiliated with Alpine Construction Company; and, given the widely reputed involvement of both Gold and Brancata in North Side gambling, it seemed probable to me that Mr. Brancata would have at least affected Gold's participation in Alpine."

Demaris affidavit, p. 7

From this affidavit, it appears clear that Demaris did not know the statement was false and plaintiff has submitted no evidence to contradict this conclusion. Therefore, the sole remaining issue was whether defendants' publication was with reckless disregard for the truth or falsity of the statement. The definition of "reckless disregard" has recently been succinctly set forth by the Supreme Court:

"[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice."

St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). See also, Waskow v. Associated Press, 149 U.S.App.D.C. 278, 462 F.2d 1173, 1176 (1972).

Using the above standard, it is apparent that while more thoroughness might be desirable and would have caught the subsequent retraction, failure to do so does not result in "reckless conduct" unless the defendant "entertained serious doubts as to the truth of his publication". *St. Amant,* 390 U.S. at 731, 88 S.Ct. at 1325. Defendant Demaris submits by affidavit that he entertained no such doubts, and no showing has been made to contradict this.

Therefore, it is the conclusion of this Court that defendants' actions do not constitute actual malice as required by New York Times v. Sullivan. Accordingly, defendants' motion for summary judgment is granted.