Alfred E. GAY, Plaintiff,

v.

Lew M. WILLIAMS, Jr., d/b/a Ketchikan Daily News, and the Associated Press, Defendants.

Alfred E. GAY, Plaintiff,

v.

SOUTHEASTERN NEWSPAPERS CORPORATION, d/b/a Southeast Alaska Empire, and the Associated Press, Defendants.

Civ. Nos. A 77–129, A 77–130.

United States District Court, D. Alaska.

Sept. 10, 1979.

Hagans, Smith, Brown, Erwin & Gibbs, Anchorage, Alaska, for plaintiff.

Groh, Eggers, Robinson, Price & Johnson, Anchorage, Alaska, Richard N. Winfield, Jerome L. Wilson, James M. Ringer, Donald F. Luke, Rogers & Wells, New York City, for Associated Press.

Hal R. Horton, Birch, Horton, Bittner, Monroe, Pestinger & Anderson, Anchorage, Alaska, David E. Hudson, Hull, Towill, Norman, Barrett & Johnson, Augusta, Ga., for Southeastern & Morris.

W. Clark Stump, Ketchikan, Alaska, Evan L. Schwab, Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for Williams & Ketchikan Daily News.

## ORDER

FITZGERALD, District Judge.

These diversity actions[1] for libel arise out of publications of a wire service story concerning plaintiff Alfred E. Gay by newspapers in Juneau and Ketchikan, Alaska. The actions involve common questions of law and fact, and are consolidated for decision on defendants' motions for summary judgment.

The newspaper stories are alleged to have linked plaintiff with drug trafficking in Arizona, and were founded on a news report prepared by defendant Associated Press (AP) which in turn was based on published newspaper accounts of an article concerning Alfred E. Gay prepared by Investigative Reporters and Editors, Inc. (IRE). Following the death of Don Bolles, an investigative reporter for the *Arizona Republic*, a group of journalists established the "Arizona Project" to investigate organized crime in Arizona. Bolles, who had been involved in an ongoing investigation into crime and corruption in Arizona, was killed by a bomb in 1976 on his way to interview an informant. IRE wrote a series of articles for publication throughout the country. The IRE story on Gay was prepared in March 1977 and made available to the press for release on April 1, 1977.

The AP, in response to a request from a member, the *Anchorage Times*, prepared a news report on the IRE story regarding Gay on April 7, 1977. The report was transmitted the following morning to AP's newspaper members in Alaska. The *Ketchikan Daily News*, owned and co-published by defendant Lew Williams, published the AP story in its entirety and added its own headline which read, "Alaska bush pilot accused in Arizona drug trafficking". The

---

1. Plaintiff Gay, a resident of Alaska, commenced both actions in Superior Court, Third Judicial District, State of Alaska, and defendants timely removed them to this court. Defendant Southeastern Newspapers Corporation is a Georgia corporation with its principal office and place of business in Augusta, Georgia. Defendant Associated Press (AP) is a New York corporation with its principal office and place of business in New York. Defendant

Lew Williams is a resident of Alaska. As to the action brought against Williams and the AP, complete diversity is lacking since both Gay and Williams are residents of Alaska. Nevertheless, because separate publications are involved, the claim against non-resident AP is a "separate and independent" cause of action under 28 U.S.C. § 1441(c); the entire case is therefore properly removable. *See* Restatement (Second) *Torts* § 578 comment b.

*Southeast Alaska Empire* in Juneau deleted the final three paragraphs of the AP news report and published the remainder with the addition of its own headline, "Alaska Pilot Involved? Drug Corrider (sic) Alleged."

The stories stated that "published accounts of a series by a team of investigative reporters" say that Gay, "a wealthy Alaskan bush pilot and owner of a small Arizona border town," was a "mystery man of the Arizona drug corridor," and that the town owned by Gay is a "major crossing point for drug smugglers." According to the stories, Gay had been interviewed by reporters and had denied any role in drug smuggling. The stories continued by noting, however, that the "IRE had learned that Gay admitted 'flying in and out of Mexico and ducking underneath border radar.'" A sheriff's department official was quoted as saying that drug transactions took place in back of Gay's store in the town of Lukeville. In the final paragraphs, the AP report continued its summary of the published accounts by noting that two of Gay's employees had been convicted on narcotics charges after trying to sell heroin to undercover agents. The prosecutor stated that Gay had "tried hard to get one of them free." The report concluded by saying that Gay had come to the attention of the IRE when they were investigating "reports that a mobster had tried to purchase Lukeville some years before Gay purchased the 67 acre town in 1967."

■ The AP report and the stories published by the two newspapers are defamatory in themselves because they have a natural tendency to injure plaintiff's reputation.[2] Although factual issues as to the

publication's truth or falsity have not been resolved, the issue raised by summary judgment is whether defendant newspapers and the AP, assuming the stories are false, have a qualified privilege to publish the defamatory material.

■ The United States Supreme Court in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) held that the First Amendment does not permit the imposition of "liability without fault" on a "publisher or broadcaster of a defamatory falsehood injurious to a private individual." Aside from this restriction,[3] the states "may define for themselves the appropriate standard of liability." *Id.* at 347, 94 S.Ct. at 3010. Thus, the question of privilege in this diversity action must be resolved under Alaska law[4] in conformity with *Gertz.*

The Alaska Supreme Court in 1966 held that where an "issue or matter of public interest" is involved, a privilege extends to misstatements of fact, "so long as such misstatements are relevant to the subject matter" and are not shown to have been made with "actual malice."[5] *Pearson v. Fairbanks Publishing Co.*, 413 P.2d 711, 713 (Alaska 1966). In *Pearson*, plaintiff had alleged that two editorials, published in defendant's newspaper, were defamatory. The editorials had been written in response to statements made by plaintiff, Drew Pearson, in his own syndicated newspaper column. By extending a privilege to misstatements of fact on matters of public interest, the court chose to adopt a minority position. The court rested the privilege on the public's interest in reasonable freedom of debate and discussion on public issues, and declined to speculate as to whether the

---

2. *Fairbanks Publishing Co. v. Pitka*, 376 P.2d 190, 194 (Alaska 1962); *see generally* Prosser, Law of Torts, Section 111, p. 739 (4th ed. 1971).

3. The Court also placed a limitation on damages. States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth. *Gertz v. Robert Welch, Inc.*, 418 U.S. at 349, 94 S.Ct. at 3011.

4. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

5. The definition of "actual malice" given in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–280, 84 S.Ct. 710, 725–726, 11 L.Ed.2d 686 (1964) was adopted. Thus, actual malice exists "when it is proved that the defamatory statement [is] made with knowledge that it was false or with a reckless disregard of whether it was false or not." *Pearson v. Fairbanks Publishing Co.*, 413 P.2d at 715.

protection of the First Amendment would be extended by the United States Supreme Court to encompass "public figures"[6] as well as "public officials."[7] Thus, under the Court's analysis, it was unnecessary to determine whether plaintiff was a "public figure."[8]

█ Although the *Pearson* holding arguably could be limited to situations where plaintiff had invited comment or criticism by seeking to influence public opinion by his own statements, a few years later the Alaska Supreme Court expressly ruled that the "actual malice" standard applies in a libel action brought by private individuals against a newspaper for defamatory statements regarding the individual's involvement in "an event of public or general concern." *West v. Northern Publishing Co.*, 487 P.2d 1304 (Alaska 1971) (per curiam opinion). *West* involved a suit by two taxicab companies who were charged in an article appearing in defendant newspaper with unlawfully furnishing liquor to minors.

Finding the plurality opinion of the United States Supreme Court in *Rosenbloom v. Metromedia, Inc.*[9] to be controlling[10] under the Supremacy Clause, the court in *West* concluded that the defamatory statement regarding "illegal distribution of intoxicating beverages to minors in the City of Nome concerned a matter of public or general concern," and that no actual malice had been shown.[11] *Rosenbloom* was later rejected by the United States Supreme Court in *Gertz*[12] leaving the states free to select their own standards of liability. The Alaska Supreme Court, however, has not spoken on the issue since *Gertz*.

Gay argues that if the Alaska court were to review the matter in light of *Gertz*, the court would reject *West* in favor of a less restrictive standard for private individuals.[13] Gay contends that the Alaska court's reliance on the Supremacy Clause in *West* leads to the conclusion that the *Rosenbloom* standard would be rejected in Alaska following *Gertz*. This argument is not per-

---

6. *Pearson v. Fairbanks Publishing Co., supra,* was decided prior to *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) which applied the actual malice standard to "public figures."

7. *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

8. Defendants in the case at bar also contend that Gay is a public figure and that a privilege exists as a matter of federal law. I conclude that Gay is not a public figure. *See Time, Inc. v. Firestone,* 424 U.S. 448 (1976); *Gertz v. Welch, Inc., supra.*

9. 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971). *Rosenbloom* extended First Amendment protection to defamatory falsehoods relating to private persons if the statement concerned matters of general or public interest.

10. The court in *West,* aside from a reference in a footnote, did not discuss the *Pearson* case. The court affirmed the trial judge's ruling on summary judgment and in the footnote quoted the trial court's conclusion of law that the publication came "within the legal standards announced" in *New York Times v. Sullivan* and *Pearson. See West v. Northern Publishing Co., supra* at 1305 n. 2.

11. *West v. Northern Publishing Co., supra* at 1306.

12. *Gertz v. Robert Welch, Inc.,* 418 U.S. at 346, 94 S.Ct. at 3010.

13. Plaintiff cites nine state jurisdictions which have considered the question since *Gertz* and have adopted the negligence standard by which liability is determined for defamatory falsehood. *Cahill v. Hawaiian Paradise Park Corp.,* 56 Haw. 522, 543 P.2d 1356 (1975); *Troman v. Wood,* 62 Ill.2d 184, 340 N.E.2d 292 (1976); *Gobin v. Globe Publishing Co.,* 216 Kan. 223, 531 P.2d 76 (1975); *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 350 A.2d 688 (1976); *Stone v. Essex County Newspapers, Inc.,* 367 Mass. 849, 330 N.E.2d 161 (1975); *Thomas H. Maloney & Sons, Inc. v. E. W. Scripps Co.,* 43 Ohio App.2d 105, 334 N.E.2d 494 (1974), *cert. denied* 423 U.S. 883, 96 S.Ct. 151, 46 L.Ed.2d 111 (1975); *Martin v. Griffin Television, Inc.,* 549 P.2d 85 (Okl.1976); *Taskett v. King Broadcasting Co.,* 86 Wash.2d 439, 546 P.2d 81 (1976); *Peagler v. Phoenix Newspapers, Inc.,* 114 Ariz. 309, 560 P.2d 1216 (1977). At least three jurisdictions, however, have adopted the "actual malice" standard subsequent to *Gertz. Walker v. Colorado Springs Sun, Inc.,* 188 Colo. 86, 538 P.2d 450, *cert. denied* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975); *Aafco Heating & Air Conditioning Co. v. Northwest Publications, Inc.,* 162 Ind.App. 671, 321 N.E.2d 580 (1974), *cert. denied* 424 U.S. 913, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976); *Peisner v. Detroit Free Press, Inc.,* 82 Mich.App. 153, 266 N.W.2d 693 (1978).

suasive, however, since *Gertz* expressly leaves it to the states to determine the appropriate balance between competing interests so long as negligence is established as the minimum constitutional standard. At the time *West* was decided, Alaska recognized *Rosenbloom* as the federal constitutional standard. I conclude that the Alaska Supreme Court, if faced with the issue, would retain the *Rosenbloom* actual malice standard adopted by *West*.

In *Pearson*, decided long before *Rosenbloom* or *Gertz*, the Alaska court struck the balance between the competing interest of safeguarding an individual's reputation and allowing freedom of debate and expression on public issues. The court opted to extend the privilege in favor of the public's interest in freedom of discussion on public issues. Accordingly, I conclude that the Alaska Supreme Court would not recede from the actual malice standard adopted in *West*.

### A.  *Event of Public Interest*

■ It is apparent that there was public interest in the series of articles written by IRE regarding the investigation of organized crime in Arizona. Indeed, the series was a newsworthy event in itself. The article concerning Gay's alleged involvement in smuggling drugs from Mexico through a border town in Arizona clearly relates to a matter of general public interest; that is, the illegal importation of drugs into the United States.[14] I conclude, therefore, that the defamatory statements published by defendants concerned a matter of general public interest under *West*.

### B.  *Actual Malice*

The defendants have submitted affidavits describing the process by which the stories were prepared for publication. They contend that Gay is unable to make a showing that the stories were published with actual malice. My review of the rather attenuated record leads me to conclude that Gay is unable to show that any of the defendants published the articles with either knowledge that the publications were false or with reckless disregard of the truth.

■ According to the affidavit of Lew Williams, owner and publisher of the *Ketchikan Daily News*, his newspaper is an AP member and subscribes to wire service stories. The AP story on Gay appeared on page two of the newspaper on April 8, 1977, and was an exact reproduction of the AP wire service story. The headline was written by a news editor, and the article is credited to the AP. The paper made no independent investigation and did not attempt a verification. Mr. Williams states that he knew nothing about Gay prior to receiving the AP news report. Neither he nor his staff had any reason to doubt the accuracy of the news report. Although he knew of the IRE investigation in Arizona, nothing had come to their attention to indicate that the published account might be false or inaccurate.

The *Southeast Alaska Empire* story also originated with the AP story, except for the headline written by Kim Elton, editor of the *Empire*. Certain deletions were made for space reasons, and the article appeared on page eight on April 8, 1977. Neither Elton nor any other employee of the publisher knew Gay or had knowledge about him at the time of the AP dispatch. Although the editor in Juneau attempted to reach the AP bureau in Anchorage to determine if there was any connection by Gay or his business that would be of local interest, he was unable to reach the Anchorage office prior to publication deadline and the story was routinely run. Neither the *Empire* nor any employee of Southeastern had any reason to believe that the story was false.

In summary, both newspapers relied on the reputation of the AP as a reliable news source in publishing the Alfred Gay story. Without relying on such news-gathering

---

14.  Criminal activities have consistently been recognized as matters of public interest. *See Rosenbloom v. Metromedia, Inc., supra; Mistrot v. True Detective Pub. Corp.*, 467 F.2d 122, 124 (5th Cir. 1972); *Alpine Construction Co. v. Demaris*, 358 F.Supp. 422, 423 (N.D.Ill.1973); *West v. Northern Publishing Co., supra.*

sources, defendants argue, local newspapers would be forced to publish only local news. The headlines appearing with the article were based on the contents of the AP news reports, and neither headline named plaintiff. I conclude that there is no evidence showing that the newspapers published the defamatory material with actual malice or with reckless disregard for the truth. Summary judgment is therefore granted in favor of the Alaskan newspapers.

According to the affidavit of Louis Boccardi, as executive editor of the AP, he determined that the IRE stories would have news significance and should be covered by AP. Boccardi knew several of the journalists working on the Arizona Project, including the project director, Robert Greene of *Newsday*. Greene had twice been the recipient of Pulitzer Prizes for his work with *Newsday* reporting on international drug traffic. In Boccardi's opinion the project involved some of the nation's top investigative journalists. He believed the stories to be carefully researched and edited.

The following guidelines were established by Boccardi for AP's coverage of IRE stories. A news reporter, Louise Cook, was assigned to read each IRE story as it was received and to select and draft AP news reports on those articles she considered to have national news significance. For each of the stories she selected, she was to determine whether an AP member newspaper had published the IRE story, and then compare her draft with the published account to see whether her version was an accurate summary of the story already published. AP did not conduct its own independent investigation of the contents of stories published.

The AP did not consider the Gay story to have a sufficient national news significance to prepare a news report. The news report concerning Gay was prepared and transmitted only in response to a specific request from the *Anchorage Times*. Boccardi instructed Cook to ascertain whether the IRE article on Gay had been carried in any AP member newspapers and, if so, to prepare an AP news report for distribution to the Alaska member who requested it and to all other AP Alaska members. Neither Boccardi nor Cook knew plaintiff and neither had any knowledge that the statements in the IRE story were not true.

Gay contends that the AP entertained doubts about the reliability of the IRE's reporting. I can find no support for this assertion in the record. This argument rests entirely on the assertion that many of AP's member newspapers refused to publish the series, and that the AP was aware that newspapers in Arizona had specifically refused to publish the IRE article about Gay. Even if these facts were to be established, Gay fails to show that AP questioned or should have questioned the reliability of the IRE story. Gay also refers to articles in *The Los Angeles Times* and the *Chicago Tribune* critical of IRE's journalistic methods. However, these articles appeared subsequent to the defamatory publications now at issue, and therefore do not show AP's knowledge at the time of the publication.

The Supreme Court in *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968), stated that to prove the AP published with reckless disregard for the truth, plaintiff must show that AP "in fact entertained serious doubts as to the truth of [the] publication." I conclude from my examination of the record that there is no evidence that the AP acted with reckless disregard for the truth when it transmitted its news report based on published accounts of the IRE story about Gay. Summary judgment is also granted in favor of defendant AP.

ORDERED ACCORDINGLY.