Olaf A. DROZDOV and E. I. duPont de Ne-
mours & Co., Inc., a Delaware Corpora-
tion, Defendants-below Appellants,

v.

Judith WEBSTER, Plaintiff-below Appellee.

Supreme Court of Delaware.

Argued Sept. 12, 1975.

Decided Sept. 30, 1975.

Mason E. Turner, Jr. of Prickett, Ward, Burt & Sanders, Wilmington, for defendant below, appellant.

Stephen B. Potter, Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., McNEILLY, J., and QUILLEN, Chancellor.

McNEILLY, Justice:

This appeal from a verdict in favor of plaintiff for personal injuries suffered in an automobile accident contests the admissibility of an expert's economic projection of future lost wages and the Court's instructions to the jury on recovery of damages for loss of use of a portion of plaintiff's body.

I

The collision of automobiles driven by plaintiff and defendant resulted in no damage to defendant's vehicle and only a dent in the right rear of plaintiff's vehicle. Plaintiff appeared to have suffered no injuries and experienced no pain; within two days, however, she developed back and leg pains and consulted a neurosurgeon. He prescribed conservative treatment consisting of physical therapy, traction, and a back brace. He further performed several nerve blocks which left her leg numb but relieved the burning sensations and pain

temporarily. Ultimately, the condition was diagnosed as a pinching or entrapping, of the right femoral nerve requiring surgery which, at best, had many limitations but was feasible because of the patient's continuing distress. The physician anticipated that numbness of the leg would result but hoped that the pain would be relieved. The operation, however, proved to be a "failure", according to the doctor's testimony, because of the continued pain and resulting limitation of endurance and ability to perform daily activities as well as the anticipated numbness.

Plaintiff sought to recover damages for loss of future earnings and impairment of earning capacity ·in connection with *part-time* employment, but made no such claim as to her regular employment in which she continued after the accident.

The evidence showed that prior to the accident plaintiff maintained only part-time jobs until June, 1971 (the accident occurred in July, 1972) when she bagan to work on a full-time basis as a key punch operator for a bank.

For four weeks prior to the accident, plaintiff undertook an extra part-time job, supplementing her full-time income, to accumulate savings for a vacation. She worked on an "on call basis" and there is no indication in the record how long her part-time employer would have had such a job opening. Her gross earnings from the part-time job for this period were $290.00. From this four-week earning history, over objection, plaintiff's expert witness, an economist, projected her loss of future earnings and part-time earning capacity. He took her average weekly part-time wage ($72.71), assumed that she would work part-time 25 weeks per year until 1985 and 15 weeks per year thereafter to the year 2005, and applied a 5% per year growth figure and a 6% discount figure to arrive at a $40,125 loss projection. The verdict was $45,000.

## II

Defendant does not contest liability nor does he deny that plaintiff's injury was proximately caused by the accident. He does contend that it was reversible error to admit the economic projection into evidence because it was based on speculation, conjecture, and unsupported assumptions of fact.

The record supports this contention: There is no indication that plaintiff would ever work 25 full weeks per year at part-time work (experience showed only sporadic days or weeks with maximum one year earnings of $800.00) ; her first year projected loss was $2,208.75 in part-time earnings as compared with her actual life-time peak of $800.00; the economist assumed she would not work at any extra or part-time job in the future when in fact she did extra work following the accident; and he assumed she intended to pursue extra employment until she was 62 years of age when in fact this assumption was based not on plaintiff's intentions but upon economic statistics concerning persons in regular employment.

There must be some reasonable basis in fact upon which a jury may estimate with a fair degree of certainty the probable loss a plaintiff will sustain in order to make an intelligent determination of the actual extent of this loss. Unless the evidence establishes with reasonable probability the nature and extent of future consequences there can be no recovery for that item of damage. *Henne v. Balick,* Del., 1 Storey 369, 146 A.2d 394 (1958).

We find no basis in the record for allowing the economist's projection and for that reason we must reverse.

## III

Defendant further contends that the Court's charge to the jury that plaintiff could recover damages for loss of use of a portion of her body was error.

The Court instructed the jury, in part, as follows:

"If you determine that plaintiff is entitled to a verdict, you may consider the following elements of compensation:

(a) Such sum or sums of money as will reasonably compensate her for the personal injuries she has already sustained as a proximate result of this action, and for any permanent personal injuries which you find that she will suffer in the future as a result of this accident;

(b) For any pain, numbness and suffering, both physical and mental, which you may find she has endured in the past, is presently suffering or will continue to suffer in the future as a proximate result of the injuries sustained in the accident;

(c) A reasonable sum of money, such reasonable sum of money as you may determine to be proper as will compensate her for limitation upon her earning capacity into the future in connection with her ability to perform part-time or extra work in addition to her regular employment. Such award should be limited to the actual decrease in part-time or extra earnings which you find she will suffer in the future discounted to present value. There is no claim of loss of earnings in connection with plaintiff's regular employment;

(d) Any damages which you find that plaintiff has suffered for loss of the use of a portion of her body and its effect upon her leading a normal life in all other respects." (A–46, 47).

Defendant agrees that the injury causes numbness and pain, but contends that this can be classified only as a loss sensory in nature and function, and not as motor function loss.

He relies upon the following excerpt from Dr. Gibb's testimony:

"Q. The lateral femoral nerve, is that the correct pronunciation of what we were talking about?

A. Yes.

Q. Does that nerve have a motor function of any sort?

A. No sir. Its a purely sensory nerve.

Q. Would you explain to the ladies and gentlemen of the jury the distinction between a motor function and a sensory function?

A. Sensory is for feeling. Motor is for movement.

Q. If a nerve has a motor function, can you section it, a you did in this case?

A. Well, you pay a price for it. The things that it moved don't work.

Q. In other words, you would lose a specific motor function that nerve was involved in?

A. Absolutely.

Q. Whereas in a sensory function, you simply lose the sense of feeling that that nerve provides; is that correct?

A. That is correct.

Q. And the sectioning of the nerve which has only a sensory function does not result in any specific motor impairment of any kind?

A. No weakness.

Q. All it does is get rid of the sense of feeling, hopefully?

A. That is correct.

Q. Does it sacrifice any muscle function?

A. No sir. (136–137)."

We find nothing in the record to lead us to a different conclusion than that contended by the defendant and for purposes of retrial we note this as additional error.

\* \* \*

Reversed and remanded for a new trial on the question of damages only.