Harold C. MILLMAN et al., Petitioners-
below-Appellants,

v.

Edward Preston MILLMAN et al.,
Respondents-below-Appellees.

Supreme Court of Delaware.

Submitted March 10, 1976.

Decided April 27, 1976.

Motion for Reargument Denied May 11, 1976.

Robert L. Halbrook and Battle R. Robinson, Wilson, Halbrook & Bayard, Georgetown, for petitioners below, respondents.

James C. Sabo and Kenneth M. Millman, Georgetown, for the estate of Edward Millman, respondent below, appellee.

Randy J. Holland, Dunlap & Holland, Georgetown, for the Minor Grandchildren.

Before HERRMANN, Chief Justice, DUFFY and McNEILLY, Justices.

HERRMANN, Chief Justice.

In this will contest case, a jury trial to test the will's validity was ordered under 12 Del.C. § 1311.[1] The contestants appeal from the Superior Court's directed verdict in favor of the proponents. Contending that an appeal to this Court at this stage is inappropriate, the proponents have moved to dismiss the appeal. On both points, we agree in result with the contestants.

1. 12 Del.C. § 1311 provides:
"§ 1311. Reference of issues to jury.
"The register [of wills] may order any issue of fact whereof he may prescribe the form, touching an instrument purporting to be a will, to be tried by a jury in the Superior Court."
Effective December 25, 1974, a new Probate Code changed the procedures for caveat proceedings. See 12 Del.C. §§ 1308, 1309.

## I.

In 1970, Edward Millman, then eighty-six and the patriarch of a large family, met with an attorney to prepare his will. Shortly thereafter, a will was executed. In 1972, Millman died. The contestants—three of Millman's fifteen children—challenged the validity of their father's will on the ground that he was without knowledge of its true contents.[2] Prior to a hearing on the Petition for Proof of Will, the Register of Wills ordered the issue submitted to a jury in the Superior Court under § 1311. At the close of the contestants' case in the jury proceeding, the proponents moved for a directed verdict. After weighing the evidence and declaring the contestants' testimony "completely incredible", the Superior Court granted the motion for a directed verdict in order to prevent a "sympathy verdict".

## II.

As to the motion to dismiss the appeal: proponents argue that, since the Register's referral of the will to the Superior Court for a determination of its validity did not transfer the entire case to that Court, *In re Harmon's Will,* Del.Super., 8 Terry 560, 95 A.2d 47 (1953); and since the Superior Court's determination is only advisory, *Cummins v. Cummins,* Del. Super., 1 Marv. 423, 31 A. 816 (1895), the Register's failure to rule definitively leaves no final judgment from which to appeal. They also point out that an appeal from the Register is to the Court of Chancery[3] before it can be taken to this Court.

Contestants argue, on the other hand, that the order of the Superior Court directing a verdict meets our tests for an interlocutory appeal: it raises a substantial issue (the Trial Judge's power to direct a verdict in this *devisavit vel non* proceeding); and it establishes legal rights (by

2. The contestants were given specific bequests, with the residue (including land and farm equipment) left equally to each of the other twelve children.

denying them their alleged right to a jury verdict). See, *e. g., Wife M v. Husband M,* Del.Supr., 346 A.2d 521 (1975); *Husband C v. Wife C,* Del.Supr., 320 A.2d 717 (1974); *Hanby v. Maryland Casualty Co.,* Del.Supr., 265 A.2d 28 (1970).

In these circumstances, we hold this interlocutory appeal appropriate. In the interest of the efficient administration of justice, we will not postpone the question here presented to the stage of ultimate and apparently inevitable appeal to this Court via the circuitous route through the Register of Wills and the Court of Chancery; the substantial saving of time and expense commends this more direct approach. See *DuPont v. DuPont,* Del.Supr., 32 Del.Ch. 405, 82 A.2d 376 (1951).

Accordingly, the motion to dismiss the appeal is denied.

## III.

In the Superior Court, contestants adduced evidence addressed to their proposition that the executed will was not the Last Will and Testament of Edward Millman because he was without knowledge of its contents. They presented the testimony of one of the will's co-executors that the testator did not know what he was signing when the will was executed, and did not intend the will as written. (Apparently, the testator could not read because of eye defects.) Additionally, evidence was presented by seven witnesses who testified that the testator intended that his estate be divided equally among his fifteen children. Therefore, the contestants argued, leaving the bulk of his estate to twelve of his fifteen children "raises an inference that decedent did not know the contents of his will at the time of its execution", and that "a *prima facie* case [has been established] that the will is invalid * * *."

3. See Del.Const. Art. IV, § 31. By 57 Del. Laws c. 402, the probate functions of the Orphans' Court, formerly the Court to which an appeal from a Register of Wills would be taken, were transferred to the Court of Chancery.

In granting the proponents' motion for directed verdict, the Trial Judge weighed the evidence[4] and passed on its credibility in an attempt to prevent a "sympathy verdict". This was impermissible.

Generally, where "under any reasonable view of the evidence, the jury could justifiably find in favor of the plaintiff and against the defendant", *Hyman Reiver & Company v. Merlonghi*, Del. Supr., 236 A.2d 367, 368 (1967), the Trial Judge may not direct a verdict. In viewing the plaintiff's case, however, the Court may not weigh the evidence or pass on its credibility, as it may do at the post-trial stage to prevent injustice. *Garrison v. United States*, 4th Cir., 62 F.2d 41 (1932). See also *Brady v. Southern Ry. Co.*, 320 U. S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943) (courts may not weigh credibility of witnesses when considering a directed verdict motion); *McCloskey v. McKelvey*, Del. Super., 4 Storey 107, 174 A.2d 691, 693–94 (1961); see generally 5A *Moore's Federal Practice* ¶ 50.02[1] (2d ed. 1975). The rule is the same as to evidence adduced by a contestant in a § 1311 proceeding.

It is clear that this was not a case of no substantial evidence adduced by the contestants. Accordingly, the directed verdict for the proponents was reversible error.

IV.

At issue on remand will be the question of whether the longhand notes of the will's draftsman, made at his initial meeting with the testator, are admissible. The Court below refused to admit the notes on the ground that "counterbalancing factors * * * outweigh the probative value of [the] evidence." Contestants maintain the notes are admissible as a past recollection recorded[5] and "are relevant to the issue of whether or not the purported will is in fact the will of the decedent."

Proponents insist that the draftsman never vouched for the accuracy of the notes he made; therefore a vital requirement for admission under the past recollection recorded rule is missing. Additionally, they contend that before instructions to a draftsman are admissible, it must be shown they were not read by, nor variations from instructions explained to, the testator. *Chandler v. Ferris*, Del.Super., 1 Harr. 454 (1834).

We find the contestants' arguments persuasive: the tests seem to be met. It is conceded that the draftsman had firsthand knowledge of the event, but that he could not recall it. It also appears clear from the date on the memorandum that it was prepared at a time sufficiently close to the event. Finally, it is clear from the testi-

---

4. It is clear from the totality of the Trial Judge's remarks that he weighed the evidence instead of merely ascertaining whether contestants' position was supported by any substantial evidence. While explaining the reasons for his decision, the Trial Judge said:
   "It seems clear to me, looking over all the complex arguments that we have had in chambers and in this room, that when we get down to the issue there seems no question in my mind but that the will * * * is in fact the testamentary scheme, the consistent scheme of the testator, and is in fact the last will and testament. I don't know of any reasonable view of any credible evidence that I have heard that casts any substantial doubt on that proposition.
   "The case is one that is peculiarly open, I think, to verdicts based on sympathy. It would be easy. This jury has heard testimony about vast amounts of money, about three of fifteen people being somewhat disinherited, * * *. Although that maybe

shouldn't influence a decision on this kind of motion, it certainly is a factor to be considered.
   * * *
   The slight bit of evidence, which would tend to support, and which you [contestants] have gone over so thoroughly, and which would tend to support the contestants' case, would simply open the door, in my opinion, to a sympathy verdict."

5. The requirements for admission of a recorded past recollection as an exception to the rule against hearsay testimony are: (1) firsthand knowledge by the witness of the event; (2) an original memorandum made contemporaneously or relatively near the time of the event; (3) present inability to recall the event; and (4) the witness' vouching for the accuracy of the written statement or memorandum. See *McCormick on Evidence* § 299 (2d ed. 1972).

mony of the draftsman that he considered his notes accurate, especially since he recognized the handwriting on the notes as his own. *Cf. Walker v. Larson*, 284 Minn. 99, 169 N.W.2d 737 (1969); *McCormick on Evidence*, § 303 (2d ed. 1975). To answer the proponents' second argument, the notes were not offered to vary the will. Variances were shown; but with the purpose of ascertaining whether, because of an alleged lack of knowledge of its contents, the document the testator signed was actually his Last Will and Testament. Such inquiry is clearly the purpose of a *devisavit vel non* proceeding. See *Davis v. Rogers*, Del.Super., 1 Hous. 44, 92–3 (1855). As an aid in this inquiry, the notes are relevant, and thus admissible evidence.[6]

\*   \*   \*   \*   \*   \*

Reversed and remanded for a new trial of the question presented by the Register of Wills.

---

6. The Lower Court's view that admission of the draftsman's notes would allow the jury "to sympathize with the disappointed heirs by giving them an equal share of the estate" is, in our opinion, of minimal concern.

It is somewhat ironic, however, that the contestants would want to introduce the notes, since they are also probative of the view that Mr. Millman wished to exclude the three contestants from receiving anything other than the specific bequests noted in the contested will.