**Ronald RE, Plaintiff,**

v.

**GANNETT CO., INC., t/a The News-Journal Company, and David L. Preston, Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted: March 13, 1984.
Decided: June 22, 1984.

James S. Green of Connolly, Bóve & Lodge, Wilmington, for plaintiff.

Louis J. Finger and L. Susan Faw of Richards, Layton & Finger, Wilmington, for defendants.

TAYLOR, Judge.

Defendants seek to set aside a verdict in favor of plaintiff in the amount of $1,335,-000 as compensatory damages in a libel action based upon an erroneous paragraph in the News Journal which stated that at a demonstration of an air-powered car which occurred approximately two years before the challenged newspaper article the car had failed to run. The major portion of the challenged article correctly reported that plaintiff had been indicted on charges of attempting by fraudulent means to obtain financing for the development of a fuel-saving device for an automobile.

## I

Defendant acknowledges that the challenged paragraph is incorrect. Defendant contends that plaintiff was a public figure and that by virtue of that status defendant cannot be held liable for the erroneous reporting unless the reporting was done with actual malice. The demonstration of the air-powered car was designed to show the media the capability of plaintiff's invention to power a vehicle without fuel. The members of the media were invited to attend the demonstration and were provided with a press release. After the contemporaneous newspaper reports of the demonstration no further media coverage appeared concerning that invention or concerning the plaintiff during the intervening two years between the demonstration and the challenged article.

Plaintiff contends that he was not responsible for the public relations aspect of the demonstration. However, he was a party to the demonstration and that the

purpose of the demonstration was to create public awareness and interest in his invention. The public relations arrangements were made by those who were closely associated with him in furthering this invention. Therefore, plaintiff cannot escape the legal effect of the demonstration.

■ Publishers have been afforded limited protection from libel actions where the person affected is a public official, cf. *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), or a public figure, *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). Defendant contends that plaintiff is a public figure and that as such he has failed to meet the standard of proof to which a public figure is held.

■ Those individuals who have assumed roles of special prominence in the affairs of society, who occupy positions of persuasive power and influence, are considered to be public figures for all purposes. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Individuals who voluntarily thrust themselves to the forefront of a particular public controversy in order to influence the outcome of issues of public interest are treated as public figures to the extent of the public issue in which the person participated. *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 2688, 61 L.Ed.2d 411 (1979). Moreover, the nature and extent of a person's participation in the public controversy must be considered in determining whether he is even a public figure for purposes of that public controversy, because one must have assumed a special prominence in the resolution of the issue in order to be a public figure. *Wolston v. Readers' Digest Assn., Inc.*, 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979).

■ I turn now to the cases relied upon by defendants. Those whose activities have periodically brought them before the public, such as entertainers, *James v. Gannett Co., Inc.*, N.Y.App., 40 N.Y.2d 415, 386 N.Y.S.2d 871, 353 N.E.2d 834 (1976); *Brewer v. Memphis Publishing Co., Inc.*, 5th Cir., 626 F.2d 1238 (1980), *cert. den.* 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 973 (1981), models whose photographs appear in risque magazines, *Vitale v. National Lampoon, Inc.*, E.D.Pa., 449 F.Supp. 442 (1978), those in professional sports, *Brewer v. Memphis Publishing Co., Inc.*, supra, and broadcasters, *Howard v. Buffalo Evening News, Inc.*, N.Y. Supr., 89 A.D.2d 793, 453 N.Y.S.2d 516 (1982), are included within the public figure disqualification because their activity regularly receives media coverage and they are in a position to command public attention. A nutrition advocate who had published a thousand articles on the subject of protein supplements, *Hoffman v. Washington Post Co.*, D.D.C., 433 F.Supp. 600 (1977), *aff'd without op.*, D.C.Cir., 578 F.2d 442 (1978), and chiropractors who appeared on television to discuss the virtues of their profession, *Cera v. Gannett Co., Inc.*, N.Y. Supr., 47 A.D.2d 797, 365 N.Y.S.2d 99 (1975), had become public figures with respect to the public debate over the merits of the positions which they advocated. *Orr v. Argus-Press Co.*, 6th Cir., 586 F.2d 1108 (1978), *cert. den.*, 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979) involved the developer of a proposed large shopping complex which had been the subject of a front page story initiated in part by the developer, and other publicity which was a subject of public interest. For purposes of a subsequent report of the developer's indictment on charges of fraud involving that shopping complex, the newspaper was held to be protected by several principles of law, one of which was the public figure principle.

■ To have acquired the status of a public figure, a person, other than entertainers and sports figures, must have been not only the subject of publicity but he must have voluntarily involved himself in a public controversy. *Hutchinson v. Proxmire*, supra; *Wolston v. Readers' Digest*

*Assn., Inc.,* supra.[1] The "public controversy" test is well described in the following language from *Waldbaum v. Fairchild Publications, Inc.,* D.C. Cir., 627 F.2d 1287, 1296 (1980) and quoted with approval in *Avins v. White,* 3rd Cir., 627 F.2d 637, 647 (1980):

> A public controversy is not simply a matter of interest to the public; it must be a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way.

Thus, the current thinking is that the status of public figure requires active participation in a disputed public issue.

■ Here, the prior publicity concerning plaintiff involved merely a single demonstration of an invention. While it may have been of some public interest because of its possible impact in reducing the public's consumption of fuel, it was not concerned with a public dispute, nor did it generate one. His prior publicity represented only a single prior incident, although it was upon his associates' initiative. It does not establish that this plaintiff had established regular and continuing access to the press, *Hutchinson v. Proxmire,* supra, nor that he had assumed "an influential role in ordering society," *Gertz v. Welch,* supra; *Wolston v. Readers' Digest Assn., Inc.,* supra.

In conclusion, I do not find that plaintiff occupied a position of public figure in any of its categories, and hence plaintiff was not required to prove actual malice.

## II

■ Defendants also contend that even if plaintiff is held not to be a public figure, the standard for determining fault should not be ordinary negligence but should be a higher standard of liability consistent with the time pressure under which the news media functions. In support of that position defendants cite cases from several states which have held that a defamation suit against the media should meet the test of "actual malice" or "gross irresponsibility" where the media is reporting matters of public or general concern, citing *Diversified Management, Inc. v. Denver Post, Inc.,* Colo.Supr., 653 P.2d 1103 (1982); *Bair v. Palm Beach Newspapers,* Fla.Cir.Ct., 8 Med.L.Rptr. 2028 (1982); *Bortell v. Citizens for Better Care,* Mich. App., 6 Med.L. Rptr. 1797 (1980); *Gay v. Williams,* D. Alaska, 486 F.Supp. 12 (1979); *AAFCO Heating and Air Condition-Co. v. Northwest Publications, Inc.,* 162 Ind.App. 671, 321 N.E.2d 580 (1974); *Fulton v. Advertiser Co.,* Ala.Supr., 388 So.2d 533 (1980); *Kenney v. Gurley,* 208 Ala. 623, 95 So. 34, 37 (1923); *Simonsen v. Malone Evening Telegram,* N.Y.Supr., 448 N.Y.S.2d 894, 87 A.D.2d 710 (1982).

There are several considerations in dealing with this issue. First, the negligence test by its nature takes into consideration the realities of the activity in which the negligence occurs. Therefore, as stated in the Court's instruction, the test is whether defendants used that degree of care or caution or attention which "a reasonable reporter and newspaper would use under similar circumstances". Applying the standards of a reasonable and careful reporter and newspaper takes into consideration the pressures under which current news is assembled and published. A second consideration is that the challenged paragraph did not involve news of the day, but involved background information only peripherally related to the current news article. The challenged paragraph was taken from material in defendant's archives and was misstated. I do not find a basis for according a special test more stringent than that applied to other business activities as long as the realities of the industry form an element of the test. I do not reject the negligence test in favor of the "gross irresponsibility" or "actual malice" test.

---

1. The "general public interest" test which was announced in *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971) was expressly rejected by the United States Supreme Court in the subsequent decision in *Gertz v. Robert Welch, Inc.,* supra.

### III

The next issue is whether the evidence sustains the verdict rendering defendants liable. The challenged paragraph asserted:

Two years ago, Re lured reporters to John F. Kennedy Stadium in Philadelphia, where he displayed a car he said was powered by compressed air. The car failed to start, however.

According to the evidence and the newspaper reports of the air-powered car demonstration, plaintiff and his associates had difficulty getting the car to move, spent considerable time working on the engine, eventually replacing a container of compressed air. After that, the car ran 1/4 mile around the area and stopped. From this, it is clear that the car did run but that it ran only 1/4 mile. The challenged paragraph, which stated that the air-powered car failed to start was untrue.

 Plaintiff derived his livelihood through developing inventions. A statement which maligns one in a trade, business or profession is actionable as libel without proof of special damages. *Spence v. Funk*, Del.Supr., 396 A.2d 967 (1978). The challenged article had the effect of maligning plaintiff with respect to the trade or business in which he was engaged. I find that the paragraph which erroneously reported the failure of a prior invention, which was appended to a news report of plaintiff's indictment for fraud relating to the financing of a different one of plaintiff's inventions, was sufficient ground to support the verdict insofar as it found defendant liable.

### IV

 The remaining issue is whether the verdict of compensatory damages in the amount of $1,335,000 is supported by the evidence. The test in such case is whether "the evidence preponderates so heavily against the jury verdict that a reasonable jury could not have reached the result". *Storey v. Camper*, Del.Supr., 401 A.2d 458 (1979).

Plaintiff's evidence in support of his claim of financial loss resulting from the libel centers around an agreement entered into between plaintiff and Robert R. Goffe [Goffe] on March 25, 1981 which Goffe terminated shortly after the publication of the news article which is the subject of this suit.

Goffe is a patent attorney who assists inventors in obtaining the financing for the development of inventions. Under the agreement between Goffe and plaintiff, Goffe proposed to form a limited partnership in which plaintiff would be the general partner and would receive a 10% interest in the partnership in return for the assignment of his "Transaver" patent. The "Transaver" patent, which was dated October 16, 1973, involved a vacuum modulator central valve for automatic transmissions. Goffe proposed that the limited partnership interests would consist of 35 units of $50,000 each, making a total of $1,750,000 out of which there would possibly be paid brokerage commission of 8%, and Goffe would receive a fee of $350,000. The proceeds from the sale of the partnership units would be transferred to a company formed to develop the "Transaver" device. Plaintiff would be employed by the corporation to oversee its research and development and would receive $125,000 per year for an expected 5 years.

According to Goffe's testimony, the raising of funds was to await preparation of various documents by him and depended upon evaluation of plaintiff's inventions and past results by a third party who is an expert in the field. Goffe had not progressed beyond the preliminary stage in the four-month period which preceded the article. And he had not located a person to evaluate plaintiff's inventions. Goffe gave his opinion, based on the assumption that the due diligence investigations were satisfactorily completed, that there was "a certainty of raising" the required funds.

Goffe's opinion was based on the assumption of satisfactory due diligence reports. None were ever made. Nor was

expert testimony produced at trial to supply the premise upon which Goffe's opinion was conditioned.

 The standard applied in proving future events or future losses is reasonable probability, namely, whether something is more likely to happen than not. *Drozdov v. Webster*, Del.Supr., 345 A.2d 895 (1975); *Henne v. Balick*, Del.Supr., 146 A.2d 394 (1958). Since Goffe's testimony concerning the likelihood of obtaining the funds necessary to implement the agreement between plaintiff and Goffe and hence the salary for plaintiff which the agreement contemplated was contingent on satisfactory due diligence reports, and that condition has not been proved with reasonable probability, the standard of proof required to permit a consideration of plaintiff's economic loss based on the Goffe agreement has not been met and plaintiff is not entitled to a recovery which reflects economic loss.

 Courts have required that loss of future profits be established by substantial evidence and not be left to speculation. 25A *C.J.S.* Damages § 162(2), pp. 79–81, § 162(4), pp. 82–6, 22 *Am.Jurs.2d* Damages § 172, pp. 242–5. Cf. *Pan American World Airways v. United Aircraft Corp.*, Del.Supr., 192 A.2d 913 (1963). This requirement has given rise to a concept that as a general rule, evidence of expected profits from a new business is too speculative, uncertain and remote to be considered where there is no history of prior profits. 22 *Am.Jur.2d* Damages § 173, p. 245.

With respect to the "Transaver" patent, since plaintiff did not transfer the patent he is in no worse position than he was before the Goffe agreement.

It will be noted that not only is there an absence of expert testimony with respect to the probable economic success of the venture, but there is not evidence of unsuccessful efforts to raise the finances contemplated by the Goffe agreement notwithstanding the passage of 17 months between the dismissal of the indictment and the trial.

There are other factors which militate against plaintiff's claim of economic loss. Goffe informed plaintiff after the indictment that he would delay the "Transaver" project until the ultimate resolution of the indictment. The criminal charges were dropped on May 25, 1982, approximately 10 months later. But it does not appear that any effort was made to implement the Goffe agreement thereafter. Moreover, it appears that by the time of the dismissal of the charges, the tax law had been changed (namely, to reduce the maximum tax bracket from 70% to 50%) rendering an investment of this type less attractive for the years 1982 and thereafter. This is of significance because Goffe had indicated that a substantial motivation for investors to participate in this type of venture was the tax benefit to be derived. Therefore, it appears that even if the libel had not been published, the Goffe venture might not have proceeded because of plaintiff's indictment.

In evaluating the harm which plaintiff may have suffered by virtue of the challenged paragraph, it is important to consider the detriment from the challenged article in contrast to the facts which the article misstated. According to the testimony, it appears that at the demonstration, the air-powered automobile travelled approximately 1/4 mile. The challenged paragraph stated that the automobile did not start. Admittedly, there is a distinction between an automobile that starts and an automobile that travels 1/4 mile. However, from the standpoint of having produced a useful and competitive vehicle it is doubtful that in the marketplace the invention of an automobile which would only travel 1/4 mile is of substantially greater value than a vehicle which would not start. According to unrefuted expert testimony, the theoretical maximum range of such vehicle was only 9 miles.

Plaintiff's public comments with respect to the air-powered engine, likening it to a perpetual motion machine and implying that the exhaust air could be reused with-

out expenditure of fuel, are not, according to expert testimony, acceptable within the scientific community and in themselves at least cast some doubt upon plaintiff's status as an inventor.

Another factor which the evidence dealt with is the lack of demonstrable success of plaintiff's inventions. The Miletech device which was the subject of the indictment was patented in early 1983 and, according to plaintiff, had produced astounding trial results, but has not produced such results when attempted to be tested by a recognized scientific testing organization exclusively under its control.

A realistic consideration of plaintiff's damage required a balanced consideration of the damage to plaintiff's reputation by virtue of his indictment for alleged fraud in attempting to raise financing to develop an invention against a false report that a prior invention did not work during a demonstration. In other words the article must be considered in its entirety and it must be determined whether the news of the indictment for alleged fraud damaged plaintiff's reputation to a greater extent by relating that plaintiff had previously demonstrated an air-powered car that did not start than would have resulted if the article had not referred to the air-powered car. Realizing that plaintiff's immediate objective was to obtain financing from investors, common sense and experience would indicate that fraudulent dealing would probably have much greater deterrence on prospective investors than the failure of a prior invention.

### V

■ Based on the foregoing, I conclude that there is insufficient evidence to support plaintiff's claim for specific financial loss and that after eliminating the consideration of specific financial loss, which has not been proved, the award is so grossly out of proportion as to "shock the Court's conscience and sense of justice and will be set aside". Cf. *Mills v. Telenczak,* Del. Supr., 345 A.2d 424 (1975).

The Delaware Supreme Court declared in *Spence v. Funk,* supra (at page 970):

> The general rule is that any publication which is libelous on its face is actionable without pleading or proof of special damages ... In other words, proof of damage proximately caused by a publication deemed to be libelous need not be shown in order for a defamed plaintiff to recover nominal or compensatory damages.

Plaintiff is entitled to have his damages determined according to that standard. Accordingly, the verdict is set aside and a new trial is granted on the issue of damages.

IT IS SO ORDERED.