GANNETT CO., INC., t/a The News Journal Company, and David L. Preston, Defendants Below, Appellants/Cross-Appellees,

v.

Ronald RE, Plaintiff Below, Appellee/Cross-Appellant.

Supreme Court of Delaware.

Submitted: May 14, 1985.

Decided: June 10, 1985.

554

Louis J. Finger and Richard G. Elliott, Jr., of Richards, Layton & Finger, Wilmington, and John B. McCrory, David L. Hoffberg and Robert C. Bernius (argued), of counsel, of Nixon, Hargrave, Devans & Doyle, Rochester, New York, for appellants/cross-appellees.

James S. Green (argued) and Collins J. Seitz, Jr., of Connolly, Bove, Lodge & Hutz, Wilmington, for appellee/cross-appellant.

Before HERRMANN, C.J., HORSEY and CHRISTIE, JJ., constituting the Court en Banc.

CHRISTIE, Justice:

The plaintiff, Ronald Re, filed a complaint in Superior Court, New Castle County, alleging that he had been libeled by the defendant, Gannett Co., Inc., and its reporter, David L. Preston. Plaintiff sought specific, general and punitive damages. A jury returned a verdict in plaintiff's favor, awarding him $1,335,000 in compensatory damages.

Defendants then filed a motion for judgment notwithstanding the verdict, or in the alternative, to set aside the verdict and for a new trial or remittitur. The trial court let the jury's verdict as to defendant's liability stand, but set aside the award of damages as excessive and ordered a new trial as to damages only. *See Re v. Gannett Co, Inc.*, Del.Super., 480 A.2d 662 (1984).

The parties have filed cross-appeals which were accepted by this Court as appeals from an interlocutory order. Defendants primarily contend that the trial court erred initially, when it failed to direct a verdict for defendant, and later when it refused to grant defendant judgment notwithstanding the verdict. Defendants also challenge the trial court's rulings that plaintiff was not a public figure, and that the applicable standard of care required of the newspaper in such situations is to avoid the negligent publication of libelous matter. Plaintiff asserts that the trial court erred when it set aside the jury's award of damages, and also when it disallowed plaintiff's claim of punitive damages without permitting the jury to pass on such claim. We conclude that the trial court committed no error of law, and that there was no abuse of discretion, and we affirm all its rulings.

In light of the trial court's extensive discussion of the evidence in its reported opinion, we will recite the facts which are necessary for our ruling.

Ronald Re is an inventor. In January of 1977, Mr. Re had developed a car which was represented as being powered by compressed air. The concept received special attention in view of the continuing energy crisis. A press release was prepared by a public relations firm which plaintiff had hired. This press release informed the members of the media of plaintiff's invention and of a forthcoming demonstration. The News Journal Company sent a reporter and a photographer to cover plaintiff's demonstration, which took place at John F. Kennedy Stadium in Philadelphia.

It was an extremely cold and blistery day. While the reporters gathered around, those in charge of the demonstration experienced difficulty in starting the car. Mr. Re tried three or four times to get the car started but was unsuccessful. He and his associates tried to push-start the car and then tried jumper cables, but to no avail. Finally, after about one-half hour, plaintiff changed the compressed air tank and he was able to start the car. It moved for about a quarter mile around the John F. Kennedy parking lot at a speed of 10 miles per hour. The News Journal and several other area publications reported the event in their respective newspapers the following day. These articles related plaintiff's difficulties in getting the car started, but all noted that the car had actually been in operation.

About two and one-half years later, plaintiff was indicted on 19 felony and misdemeanor counts involving charges of securities fraud, theft, attempted theft and con-

spiracy. These charges stemmed from a device plaintiff had designed earlier that year called the Miletech fuel control device, which was designed to reduce fuel consumption for automobiles. Plaintiff's attempts to secure the necessary financing for that project ultimately led to an investigation by the Attorney General's office and the indictment referred to above.

David L. Preston, an employee for defendant newspaper publisher, was assigned to write a story covering this indictment. He first checked the newspaper library to determine if there had been any prior articles published about plaintiff. He found two 1979 clippings concerning the air-powered car demonstration which had occurred two years earlier. Each article indicated that the car did in fact run.

Preston called the Attorney General's office to discuss the indictment. He then attempted to reach plaintiff, an associate of plaintiff's, and plaintiff's attorney but was unsuccessful. The article complained of appeared in the News Journal the next morning. It accurately recounted the facts surrounding the indictment. In a final paragraph, the article referred to plaintiff's prior air-powered car demonstration, and stated the following:

> Two years ago, Re lured reporters to John F. Kennedy Stadium in Philadelphia, where he displayed a car he said was powered by compressed air. The car failed to start, however.

Plaintiff then filed the suit which has become the subject of this appeal.

One additional invention of plaintiff's should be noted. Sometime between the time of plaintiff's air-powered car demonstration and his development of the Miletech fuel control device, plaintiff invented another device called the "Transaver". This invention was aimed at prolonging the life of automatic transmissions. In early 1981, plaintiff and Robert F. Goffe, Esquire, entered into an agreement whereby they formed the Transaver Research Limited Partnership to raise funds to develop, test, and evaluate the Transaver device,

which had been patented. According to the agreement, limited partnership interests were to be sold to the public in thirty-five fifty thousand dollar units (total financing amounting to $1,750,000). The partnership agreement was cancelled after plaintiff's indictment for securities fraud.

■ Two threshold matters concern whether Mr. Re may be considered a public figure in the context of this case, and, if not, what is the standard of care applicable to publishers when printing stories involving "private figures". Although a comprehensive ruling as to precisely which persons are to be regarded as public figures has not been issued, the Supreme Court has provided some comments which may serve as useful guidelines. In *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 345, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789 (1974), the court discussed two types of public figures.

> For the most part those who attain [public figure] status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment.

Defendants have seized upon the latter language, asserting that Mr. Re has thrust himself into the controversy involved in this case and is, therefore, a "limited" public figure. After reviewing the case law and the facts involved herein, we concur with the trial judge's ruling that the public issue with which Mr. Re is alleged to have involved himself, i.e. the energy crisis, was not in fact a controversy. The energy crisis was merely a matter of public concern and interest. As such, it does not qualify as a controversy, which has been defined as "a dispute ... between sides holding opposing views." *See* The American Heritage Dictionary of the English Language 290 (1969). In fact, the Supreme Court in

*Gertz,* 418 U.S. at 346, 94 S.Ct. at 3010, explicitly rejected the general public interest test previously set forth in *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971).

There was no dispute involved in the facts of this case. Many persons were interested in finding ways to save energy. Mr. Re merely proposed a way to reduce fuel consumption. The media attended his demonstration not because of a controversy or dispute but because it dealt with a matter of public interest. The situation is closely analogous to that addressed by the Supreme Court in *Hutchinson v. Proxmire,* 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979) where a matter of public concern, public expenditures, was deemed not to involve a public controversy. *Hutchinson,* 443 U.S. at 134–6, 99 S.Ct. at 2687–89.

■ Since plaintiff is not a public figure, the trial court had to decide what standard of care is owed by newspaper publishers to the "private figures" such as Mr. Re. Defendants argue that either the "actual malice" standard or "gross irresponsibility" test is appropriate under such circumstances. However, we agree with the ruling of the trial court, and the standard adopted in most jurisdictions throughout the country, that a publisher is liable if it negligently publishes libelous matter. Such a standard is especially appropriate in this case where the author of the article in question had an accurate version of the facts before him when he wrote his inaccurate article.

Defendant contends that the trial judge erred as a matter of law when he denied defendant's motion for directed verdict and the subsequent motion for judgment notwithstanding the verdict. These motions were based on the related, but distinct assertions that defendant was "libel proof", and that the article published by defendant was substantially true.

■ The question of whether a particular defendant is libel proof is resolved by an examination of whether or not the faulty portion of the article complained of can be

said to have damaged plaintiff's reputation beyond the harm already inflicted by the remainder of the article. *Simmons Ford v. Consumers Union of the U.S.,* 516 F.Supp. 742, 750–751 (S.D.N.Y., 1981); *Bose v. Consumers Union of the U.S.,* 529 F.Supp. 357, 362 (D.Mass.,1981) *rev'd on other grounds,* 692 F.2d 189, (1st Cir.,1982), *aff'd,* —— U.S. ——, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

■ The test used in deciding whether an article is substantially true involves a consideration of whether the alleged libel was more damaging to plaintiff's reputation, in the mind of the average reader, than a truthful statement would have been. As part of this evaluation, courts will consider whether the "gist" or "sting" of the article was true. *Williams v. WCAU–TV,* 555 F.Supp. 198, 202 (E.D.Pa.,1983); Prosser on Torts § 116 at 798 (4th ed. 1971). For the reasons to follow we affirm the trial judge's rulings on these points.

In furtherance of their substantial truth defense, defendants contend that an accurate description of the car's repeated failures to start, and its ability to finally travel only one-quarter of a mile at 10 miles per hour, actually would have injured plaintiff more than the inaccurate statement that "the car failed to start." In fact, defendants insist that the statement was essentially true.

■ When considering a motion for a directed verdict (and a motion for judgment notwithstanding the verdict), the trial court must consider the evidence in the light most favorable to the non-moving party. Only then, if the facts and inferences would permit reasonable persons to reach just one conclusion—that the moving party is entitled to judgment—should the motion be granted. *Eustice v. Rupert,* Del.Supr., 460 A.2d 507–9 (1983); *Haveg Corp. v. Guyer,* Del.Supr., 226 A.2d 231, 233 (1967). If, on the other hand, the jury verdict is supported by the evidence, it must be upheld.

■ After examining the record in this case, we conclude that there was ample evi-

dence to support the jury's finding that the paragraph complained of was untrue and that a truthful account of the facts would have been less damaging to plaintiff. First, defense attorney and several employees of the defendant admitted during trial that a mistake had been made. A truthful account of the demonstration had to include the fact that the car ultimately started. The article, as printed, indicates that Re had been indicted for offenses involving fraud, misrepresentation and theft. By supplementing the final paragraph to the accurate recitation of the indictment, defendant seemed to add a note of validity to the charges set forth in the indictment by suggesting that Re had been deceptive on prior occasions.

For similar reasons we conclude that the trial court acted properly in denying defendant's motions for directed verdict and judgment notwithstanding the verdict based on the contention that plaintiff was rendered "libel proof" by virtue of the predominantly accurate portion of the news article. When the facts are considered in a light most favorable to the plaintiff there is sufficient evidence from which a jury could conclude that the final paragraph concerning plaintiff's prior demonstration further damaged plaintiff's reputation. Mr. Re, Robert Goffe, Esquire, a tax and securities expert, and Professor Zimmerman, an expert in mechanical and aerospace engineering, each testified that it was the final paragraph which had caused the real damage to Mr. Re's reputation. Under all the circumstances, the court correctly allowed the determination of defendant's liability to go to the jury.

Plaintiff contends that the trial judge erred as a matter of law when he employed two distinct tests in reaching his decision to set aside the award of damages as excessive. Plaintiff asserts that the "weight of the evidence test" is reserved only for the jury's liability determination, and that the "excessiveness test" is appropriate when *reviewing* the amount of the jury award. Plaintiff contends that the court's failure

to apply only the latter test deprived plaintiff of the more deferential standard to which he is entitled when a trial court considers the appropriateness of the amount of the jury award. After reviewing the record, we conclude that the court correctly applied the proper legal standards of review to the facts of this case.

In this Court's opinion in *Storey v. Camper*, Del.Supr., 401 A.2d 458, 459–465 (1979), we dealt with the standard applicable to motions for a new trial.

On the issue of the jury's finding on liability we stated:

> ... a trial judge is only permitted to set aside a jury verdict when in his judgment it is at least against the great weight of the evidence. In other words, barring exceptional circumstances, a trial judge should not set aside a jury verdict on such ground unless, on a review of all the evidence, the evidence preponderates so heavily against the jury verdict that a reasonable jury could not have reached the result. *Storey v. Camper*, 401 A.2d at 465.

In a footnote, we distinguished the above standard from that which applies in cases dealing with the size of the jury verdict.

> [T]he award must be [so grossly out of proportion ... as to shock the court's conscience and sense of justice]. *Mills v. Telenczak*, Del.Supr., 345 A.2d 424, 426 (1975) as cited in *Storey v. Camper*, 401 A.2d at 464, n. 6.

■ The trial judge correctly applied the weight of the evidence test, initially, because he was addressing the validity of the jury's verdict on special damages and not the overall amount of the combined award.

After considering all the evidence as to damages, most of which related to the cancellation of plaintiff's Transaver Partnership Agreement, the trial judge found that there was "... insufficient evidence to support plaintiff's claim for specific financial loss ..." and that the jury's verdict, insofar as it was based on special damages, could not stand. Only then, after excising plaintiff's claim for special damages, did

the court consider the amount of the verdict and rule that the amount awarded was "so grossly out of proportion as to shock the court's conscience and sense of justice...." *Re v. Gannett Co., Inc.,* 480 A.2d at 669.

■ The correct standards of review were applied in each instance, and this Court will not disturb the trial judge's ruling unless he abused the broad discretionary powers reserved to the court in such matters. *Storey v. Camper,* 401 A.2d at 464, 465 (1975); *Stewart v. Genesco, Inc.,* Del.Supr., 406 A.2d 25, 26–27 (1979); *Riegel v. Aastad,* Del.Supr., 272 A.2d 715, 718 (1970).

■ Our review of the trial record does not indicate that the trial judge abused his discretion. Although plaintiff may dispute the court's factual emphasis, the decision to set aside the verdict was not capricious or arbitrary. *See Chavin v. Cope,* Del.Supr., 243 A.2d 694, 695 (1968).

■ Plaintiff next asserts that the trial court committed an error of law when it ruled as a matter of law that plaintiff was not entitled to punitive damages. In so ruling, the trial court held that common law malice had not been proved, without specifically applying the actual malice standard enunciated in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). It is clear, however, that states are not bound by the actual malice standard and may "... impose an additional burden upon plaintiffs who seek punitive damages in libel actions." *See Hunt v. Liberty Lobby,* 720 F.2d 631, 650, (11th Cir.1983); citing *Cantrell v. Forest City Publishing Co. et al.,* 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974). However, in this case the issue is academic since, under either standard, plaintiff has failed to present evidence which would justify an award of punitive damages. When the evidence is considered in a light most favorable to plaintiff, defendant's conduct amounted to nothing more than carelessness (as found by the trial court), and such conduct would satisfy neither the common law malice nor the actual malice standards.

For the reasons stated, the judgment of the Superior Court is AFFIRMED.