**Calvin Derek MOODY, Plaintiff Below, Appellant,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted: March 29, 1988.
Decided: Sept. 23, 1988.

L. Vincent Ramunno, and Gordon L. McLaughlin (argued) of Ramunno & Ramunno, P.A., Wilmington, for appellant.

Michael F. Bonkowski (argued) of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for appellee.

Before CHRISTIE, C.J., and HORSEY, MOORE, WALSH and HOLLAND, JJ., constituting the Court en banc.

WALSH, Justice, for the majority.

This appeal involves a suit brought by plaintiff-appellant, Calvin Derek Moody ("Moody") against his insurance carrier, Nationwide Mutual Insurance Company ("Nationwide") under 21 *Del.C.* § 2118 for recovery of "No Fault" Personal Injury Protection ("PIP") benefits for lost wages and medical expenses resulting from his injury in an automobile accident. Moody appeals a decision of the Superior Court granting a directed verdict against him based on his failure to present sufficient evidence of lost wages upon which a jury could return a verdict in his favor. We conclude that Moody presented sufficient evidence to justify submission of his claim to the jury. Accordingly, the decision of the Superior Court is reversed.

## I

On February 2, 1984, Moody was involved in an automobile accident. As a result of the accident Moody was confined to bed for three weeks and was unable to work until August 1, 1985. On February 20, 1984, Moody filed with Nationwide a PIP form to recover his lost wages and medical expenses. Nationwide refused to pay Moody his lost wage benefits because he was unable to support his claim with adequate records. Moody responded by bringing this action against Nationwide seeking compensatory damages for his lost wages and medical expenses and punitive damages for Nationwide's dilatory handling of his claim. Before trial Nationwide agreed to pay Moody's medical expenses totalling approximately $2,700. The parties stipulated that the medical expenses were not "at issue," leaving for trial Moody's claim for lost wages and punitive damages.

Moody's claim for lost wages is based on his alleged ownership, along with a partner, of a car wash located in Chestertown, Maryland. Moody testified that the car wash opened January 25, 1984, eight days before his injury on February 2. At trial Moody's evidence in support of his lost wage claim consisted of his testimony and his only business record—a photocopy of a single page ripped out of a small three ring notebook. This document, which was admitted into evidence at trial without objection, reflects six entries: 1/25—$65; 1/26—$195; 1/27—$175; 1/27—$195; 1/29—$77; 1/2—$99 (Moody testified that the last entry was a mistake and should read 2/2, the day he was injured). Moody explained at trial that the photocopy reflected total business gross receipts for the first week of $707. Moody then testified that his net share for the first week's receipts was determined by subtracting certain estimated expenses from gross receipts. This estimated net profit of $240

provided the basis for Moody's lost wage claim.[1]

Moody testified that after the accident he was unable to return to work at the car wash. Except for the initial payment of $240, Moody claimed to have received no other income from the operation of the business. The existence of the car wash business was verified by a Nationwide claims adjuster who visited the business after Moody filed his claim for PIP benefits. Moody testified that the adjuster took photographs of the operation and met his partner.

At the close of plaintiff's case in chief Nationwide moved for a directed verdict on Moody's claim for compensatory and punitive damages. The trial court granted the motion concluding that Moody had failed to present "substantial evidence" to prove his claim of lost earnings. The court reasoned that the photocopy offered by Moody was not a "business record" in the normal course of events and that it lacked supporting evidence, such as partnership or other business records, or the corroborative testimony of individuals who had information about the operation of the business. The court extended the directed verdict to Moody's claim for punitive damages concluding that a failure to establish compensatory damages precluded recovery of punitive damages.

## II

The issue presented on this appeal is whether the trial court properly directed a verdict in favor of Nationwide, thus precluding the jury from considering Moody's claim for lost wages and punitive damages. As a general rule a plaintiff in a civil action has the burden of proving a *prima facie* case before the case can be submitted to the jury. *Ebersole v. Lowengrub*, Del. Supr., 208 A.2d 495, 497 (1965). "Upon a motion for a directed verdict after the evidence is in the duty of the trial judge is to

---

1. In his opening statement, Moody's attorney told the jury that the $240 minus about twenty percent for taxes and social security would represent Moody's net pay. The total claim for lost damages of $12,335.25 was determined by multiplying the net pay by the number of weeks between the date of injury and 8/1/85 (representing the day Moody was permitted to return to work) subject to a cap representing the insurance coverage limit of $15,000 minus the medical expense payment of $2,700.

determine whether or not under any reasonable view of the evidence the jury could justifiably find in favor of the plaintiff and against the defendant. If such is the case, then he must submit the factual issues to the jury for its consideration." *Id.* at 497–498. Further, when considering a motion for directed verdict, the trial court, and this Court on appeal, must consider the evidence in a light most favorable to the non-moving party. *Parks v. Ziegler*, Del.Supr., 221 A.2d 510, 511 (1966).

■ Since Moody's claim was based on the PIP coverage of his policy of insurance with Nationwide, to establish a *prima facie* basis for recovery he is required to present some credible evidence on the following elements: (i) that he was involved in an accident and (ii) that he suffered wage loss and/or medical expense as a result. *See Webster v. State Farm Auto. Ins. Co.*, Del.Super., 348 A.2d 329, 331 (1975). Since Nationwide conceded the first element, the trial involved simply the proof of damages. With respect to his claim for loss of income, Moody has the burden of providing evidence offering "some reasonable basis upon which a jury may estimate with a fair degree of certainty the probable loss which the plaintiff will sustain in order to enable it to make an intelligent determination of the extent of the loss." *Henne v. Balick*, Del.Supr., 146 A.2d 394, 396 (1958) (citing *Restatement of Torts* § 912). "Certainty" is defined in section 912 of the Restatement of Torts as proof "with as much certainty as the nature of the tort and the circumstances permit." *Restatement (Second) of Torts* § 912. However, "the fact that there is some uncertainty as to plaintiff's damages or the fact that the damage is very difficult to measure will not preclude a jury from determining its value." *Henne v. Balick*, 146 A.2d at 396. *Henne*, of course, involved the projection of future damages, a task fraught with the risk of speculation. The proof of past damages, the issue in this case, is essentially an historical undertaking involving questions of credibility the resolution of which is, uniquely, a jury function.

■ In this case Moody has presented sufficient evidence to provide a reasonable basis for the jury to estimate with a fair degree of certainty his probable loss. Viewing the evidence in a light most favorable to Moody, the jury could "reasonably" or "fairly" conclude that he suffered lost earnings as a result of his inability to work in his car wash.

Moody supported his claim for lost wages with a photocopy of his only business record. Although of questionable quality, the photocopy provides a reasonable ground on which, if accepted as legitimate, the jury could conclude that the car wash had gross earnings of $770. Further, Moody testified that he had net earnings of $240 a week from his ownership and operation of the car wash. Specifically, during direct examination Moody testified:

A. What we did, each week, we laid so much aside for the rent, and $100 for the rent, for the electricity. We laid about $20 away for the telephone bill. Heat, oil, we laid about $25 away. And —we did so much, to put aside, rather than wait until the end of the month.

Q. When you put aside so much a week, what did you have left?

A. I guess about five-hundred-some dollars. Close to.

Q. In any event, when you separated the money, what did you get?

A. $240.

Q. And what did your partner get?

A. $240.

Based on the evidence presented in his case in chief, Moody met his *prima facie* burden of proving his weekly wage loss. Although Moody's projection of that loss over the entire period of his claimed disability is somewhat conjectural, the jury is free to reject that projection, in full or in part, based on the evidence, or lack of evidence, supporting it. But that factual issue is one for the jury. Thus, under these facts, a directed verdict which removes the *entire* damages claim from the jury is improper.

■ Nationwide argues that the evidence presented by Moody is inconsistent and of questionable quality and, therefore, would require the jury to speculate as to

the amount of wages lost. This argument, however, ignores the procedural context in which the issue is posed. When deciding a motion for a directed verdict all questions concerning the credibility and quality of the evidence must be resolved in favor of the nonmoving party. *See Chesapeake & Potomac Tel. v. Chesapeake Util.*, Del.Supr., 436 A.2d 314, 329 (1981) (citing *Ebersole v. Lowengrub*, 208 A.2d 495; *Parks v. Ziegler*, 221 A.2d 510). Although the documentary evidence in this case is fragmentary and somewhat suspect (although admitted without objection), the trial judge is not permitted to take a claim away from the jury simply because the evidence the plaintiff offers to bolster his credibility is deficient. Moody could have testified without *any* supporting documentation and the jury would have been required to determine whether he was being truthful. As previously noted, the potential deficiencies in Moody's testimony relate to his credibility and should be resolved by the jury, rather than by the trial judge on a motion for a directed verdict. *Millman v. Millman*, Del.Supr., 359 A.2d 158 (1976). Further, questions concerning Moody's credibility and the quality of his supporting evidence will undoubtedly be the focus of Nationwide's defense and upon remand, will ultimately be determined by the jury.

Finally, we consider the propriety of the Superior Court's decision to extend the directed verdict to encompass Moody's claim for punitive damages. Because we have reversed the Superior Court's decision to grant a directed verdict on Moody's claim for compensatory damages, the trial court's rationale for precluding punitive damages is no longer viable. We express no opinion on the question of whether the evidence otherwise supports a claim for punitive damages. *See, e.g., Casson v. Nationwide Ins. Co.*, Del.Super., 455 A.2d 361, 368 (1982). That issue is not before us and, in any event, will be the subject of a fresh presentation of evidence at a retrial.

\* \* \*

REVERSED AND REMANDED.

HORSEY, Justice, with whom CHRISTIE, Chief Justice, joins, dissenting:

We would affirm Superior Court's grant at the close of plaintiff Moody's case of a directed verdict for defendant Nationwide. In our view, plaintiff Moody failed to meet his burden of presenting sufficient evidence as the circumstances permitted to enable the jury, as trier of fact, to find with reasonable certainty the probable loss which Moody sustained. *Cf. Henne v. Balick*, Del.Supr., 146 A.2d 394, 396 (1958); *Restatement (Second) of Torts* § 912 (defining "certainty" to mean "with as much certainty as the nature of the tort and the circumstances permit"). In this case, plaintiff's probable loss must be measured in terms of Moody's share of the net profits of a new business enterprise conducted as a partnership. Thus, the question is whether Moody presented sufficient evidence that the partnership made a net profit—before or after his injury—for a jury to find and calculate with reasonable certainty Moody's probable loss over the eighteen months of disability for which he sought PIP benefits.

The trial court ruled that plaintiff's burden of proving his PIP claim under 21 *Del.C.* § 2118 for recovery of "lost earnings" was no different from the proof required in the usual tort claim for loss of business profits. The majority does not find error in that ruling, nor do we. However, the majority then finds $240 to be sufficient evidence of Moody's share of the business' net profits to date of injury for a jury to project with reasonable certainty Moody's "lost earnings" claim for the eighteen months' maximum period of PIP recovery. We cannot agree that Moody's evidence in chief viewed, as it must be, in a light most favorable to plaintiff, was sufficient for a jury to find that $240 represents Moody's share of the business' net profit to date of injury. The trial court, correctly applying Delaware law, found otherwise and that finding should be affirmed as not clearly erroneous. *Drozdov v. Webster*, Del.Supr., 345 A.2d 895, 896 (1975).

Moody's figure of $240 represents nothing more than his admitted share of a "draw" based on six non-consecutive days of gross receipts of $707. Moody did not testify that this sum represented his share of the net earnings of the business from its first "week" of operations. He stated that this sum was what was left over after he *set aside* arbitrary amounts for certain, but not all, of the business' expenses. He conceded that $240 was no more than a "guess" at his share of the profit; and his attorney conceded that Moody had fialed to take into account other business expenses, including social security and income taxes, which his attorney then argued should be "about twenty percent." In our view, this testimony by plaintiff does not meet the test of reasonable certainty for estimating what Moody's share of the net profits of the business would have been for eight days or any other period of the business' actual operation. The evidence was clearly insufficient to permit a projection over eighteen months of the business' recurring net profits and Moody's share thereof.

The majority also makes a distinction between the required certainty of proof of future losses and historical losses, a distinction we question. The Court reasons that proof of future loss necessarily involves some speculation, *Henne v. Balick*, while proof of past loss is essentially a question of credibility rather than sufficiency of evidence. Thus, because credibility is ultimately involved, the Court concludes that the issue of damages was a matter for the trier of fact to resolve. The Court's distinction of proof of damages of an historic loss from a future loss, if valid, would, we believe, largely eviscerate the requirement that damages be proved with a reasonable degree of certainty. We also understand Delaware law to require more certainty in proof of past damages than in projecting future damages. *Re v. Gannett*, Del.Super., 480 A.2d 662, 668 (1984), *aff'd*, 496 A.2d 553, 558–559 (1985).

We also think that the majority misconstrues the trial court's bench ruling. In effect, the court rendered its directed verdict on not one, but two, findings: (1) that plaintiff failed to present "substantial evidence" to support his PIP "lost earnings" claim; and (2) that plaintiff failed to come forward with the best evidence that the circumstances permitted to establish his "lost earnings" claim. The trial court thereby implicitly and, in our view, properly rejected application of the "new business rule" to this tort case. This rule is but an extension of the general rule of the *Restatement (Second) of Torts* § 912 and the law of Delaware: that a plaintiff may not recover damages for loss of income tortiously caused without providing the trier of fact with "some reasonable basis upon which a jury may estimate with a fair degree of certainty the probable loss which the plaintiff will sustain." *Drozdov*, 345 A.2d at 896.

Under the "new business" corollary to section 912, a number of jurisdictions, including Delaware, have denied any recovery of loss of profits for a business that, unlike an established business, has no history of profits. The rationale for the "new business" rule is that the outcome of a new business is too uncertain for calculation of projected profits to permit recovery of loss of profits where the new business has no history of profits. *Re v. Gannett Co., Inc.*, Del.Super., 480 A.2d 662, 668 (1984), *aff'd*, 496 A.2d 553, 558–559 (1985); 22 Am.Jur.2d *Damages* § 173 at page 245; *Restatement (Second) of Law of Contracts* § 352. Other jurisdictions decline to preclude recovery of lost profits for a new business if the amount of lost profits can be shown with reasonable certainty. Dobbs, *Handbook on the Law of Remedies* § 3.3 (1973).

In tort cases in particular, there are exceptions to the requirement of proof of lost profits to a reasonable certainty, even as to new businesses. One of these exceptions is the best available evidence exception. McCormick, *Handbook on the Law of Damages* (1935) (pp. 101–103). Under this exception, the best available evidence will be sufficient if it provides a "reasonable basis for computation [and is] the best evidence which is obtainable under the circumstances of the case and which will enable the jury to arrive at an approximate estimate of the loss. . . ." *Hoffer Oil Corpo-*

*ration v. Carpenter*, 10th Cir., 34 F.2d 589, 592 n. 18 (1929); *Olivetti Corp. v. Ames Business Systems, Inc.*, N.C.Ct.App., 81 N.C.App. 1, 344 S.E.2d 82, 91 (1986). This more liberal rule has particular application to tort actions for recovery of losses suffered in new business undertakings. It appears to us that the trial court was prepared to apply this exception in this case but declined to upon finding plaintiff Moody to have failed to have come forward with the best evidence of his business' profitability that the circumstances would permit.[1] In our view, the record supports this finding; and such a finding of fact cannot be found to be clearly erroneous. The trial court directed a verdict for defendant for failure of plaintiff's proof to meet the sufficiency of the evidence test for an award of damages. That threshold determination was for the court to make; and the court made that determination through a correct application of the law of damages to the facts.

---

1. The trial court stated in part in its bench ruling, "a self-employed person has all kinds of avenues to establish his loss of earnings normally ... plaintiff can't walk into court with a piece of paper like this and make out a claim. It is pure conjecture that you are asking this jury to conclude that he has lost money and how much it would be." We interpret the trial court as accepting and applying the *Restatement*'s definition of "certainty" of proof as meaning "with as much certainty as the nature of the tort and the circumstances permit." *Restatement (Second) of Torts* §§ 9, 12.