# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

CARTER PAGE, an individual, )
)
Plaintiff, )
)
v. ) C.A. No. S20C-07-030 CAK
)
OATH INC., a corporation, )
)
Defendant. )

Submitted: January 27, 2021
Decided: February 11, 2021

## *Defendant's Motion to Dismiss for Failure to State a Claim*

## GRANTED

## <u>MEMORANDUM OPINION AND ORDER</u>

Attorneys for Plaintiff[1]

Sean J. Bellew, Esquire, Bellew LLC, 2961 Centerville Road, Suite 302, Wilmington, DE 19808.

Todd V. McMurtry, Esquire, Hemmer DeFrank Wessels, PLLC, 250 Grandview Drive, Suite 500, Fort Mitchell, KY 41017 (*Pro Hac Vice*).

K. Lawson Pedigo, Miller Keffer & Pedigo PLLC, 3400 Carlisle Street, Suite 550, Dallas, TX 75204 (*Pro Hac Vice*).

---

[1] L. Lin Wood, Esquire, had been granted *pro hac vice* status to appear for Plaintiff. I revoked that status in an opinion dated January 11, 2021 for the reasons stated therein. Mr. Wood "filed" a motion to reargue that decision which was not signed by local counsel, as required by Delaware Superior Court Civil Rule 90.1, and it was sent attached to an email and not electronically filed as required by our Court's rules and procedures. *See* Delaware Superior Court Civil Rule 79.1. Mr. Wood's disregard for our Rules is consistent with his practice in other courts, part of the reason his *pro hac vice* status was revoked.

Attorneys for Defendant

T. Brad Davey, Esquire and Jonathan A. Choa, Esquire, Potter Anderson & Corroon LLP, Hercules Plaza, P.O. Box 951, Wilmington, DE 19899.

Elbert Lin, Esquire and David M. Parker, Esquire, Hunton Andrews Kurth LLP, 951 E. Byrd Street, Richmond, VA 23219 (*Pro Hac Vice*).

Jonathan D. Reichman, Esquire and Jennifer L. Bloom, Esquire, Hunton Andrews Kurth LLP, 200 Park Avenue, New York, NY 10166 (*Pro Hac Vice*).

**KARSNITZ, J.**

# FACTUAL BACKGROUND

Defamation suits are at the intersection of tort law and the exercise of free speech. One person's defamatory insult is another's rhetorical hyperbole.[2] This suit brings to one jurisdiction an offshoot of the international and politically charged dispute concerning claims of ties between the Trump campaign and Russia. While the context of the case is seductive and tantalizing, the law and its application is for me straightforward.

Plaintiff Carter Page ("Plaintiff" or "Dr. Page") was unknown to the general public and the media until he became an advisor on Russian affairs to the Trump campaign. Dr. Page is a graduate of the Naval Academy who upon discharge became involved in investment banking. Apparently, he developed contacts in Russia and spoke out concerning relations between Russia and the United States. It was not until he began advising the Trump campaign, and its ties with Russia, that Dr. Page became the focus of American authorities, politicians, and the media in general. One could not have lived through the recent past without being aware of the Trump/Russia controversy.

Defendant, Oath, Inc. ("Defendant" or "Oath") is a Delaware corporation and the parent company of, inter alia, Yahoo! News ("Yahoo") and TheHuffingtonPost.com

---

[2] *See*, e.g., *Letter Carriers v. Austin*, 418 U.S. 264 (1974), in which rhetorical hyperbole is described as extravagant exaggeration employed to rhetorical effect.

("HuffPost"). At this stage of the case I must accept the well pled allegations of the Complaint as true.[3] In it, Dr. Page takes issue with eleven articles for which he seeks to hold Oath responsible. Dr. Page's primary issue is with an article written by Michael Isikoff and published by Yahoo in September 2016 (the "Isikoff Article"). The Isikoff Article discusses the now famous, or infamous, depending upon your political perspective, Steele dossier (the "Dossier"). Of special concern to Dr. Page is Mr. Isikoff's description of the Dossier as an "intelligence report," and Steele as a "well placed intelligence source." Three other articles which Dr. Page alleges are defamatory are original content of Defendant's subsidiary HuffPost. Seven additional articles were contributed to HuffPost. Dr. Page claims all eleven articles are defamatory, and Defendant is legally culpable for their publication. Dr. Page's Complaint alleges that, as a result of the articles he was held up to ridicule, subjected to threats, including death threats, and suffered other damages.

Defendant has filed a motion to dismiss the Complaint alleging three defenses. Defendant contends that the Isikoff Article, and the three HuffPost original content articles, are essentially true. As to the seven HuffPost contributor articles, Defendant claims protection under Section 230 of the Communications Decency Act.[4] Finally, Defendant contends that Dr. Page is a limited purpose public figure, and actual malice has not been sufficiently alleged.

---

[3] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).
[4] 47 U.S.C. § 230(c)(1).

4

## The Federal Litigation

On September 14, 2017, Dr. Page sued Oath in the United Stated District Court for the Southern District of New York. There, Page asserted a federal claim based on allegations that the Articles, *inter alia*, were acts of "international terrorism."[5] He also asserted New York state-law claims for defamation and tortious interference,[6] the same claims originally asserted in this Court. The District Court granted Oath's motion to dismiss.[7] It rejected Dr. Page's federal terrorism claim on the merits, declined to exercise supplemental jurisdiction over Dr. Page's New York state-law claims, and dismissed the case.[8] The Second Circuit affirmed in a summary order.[9]

## The Delaware Litigation

On July 27, 2020, Dr. Page filed his Complaint with this Court against Oath[10] with respect to the Articles, alleging both defamation and tortious interference under Delaware law. He amended his Complaint on September 1, 2020, making minor

---

[5] Compl. ¶¶ 165–72, *Page v. Oath et al.*, No. 17 CIV. 6990 (LGS) (S.D.N.Y. Sept. 14, 2017) ("SDNY Compl.").

[6] *Id.* ¶¶ 154–64, 178–84.

[7] *Page v. Oath Inc.*, No. 17 CIV. 6990 (LGS), 2018 WL 1406621 (S.D.N.Y. Mar. 20, 2018) ("*Page I*").

[8] *Id.* at *4.

[9] *Page v. United States Agency for Glob. Media*, 797 F. App'x 550, 554 (2d Cir. 2019).

[10] In its Opening Brief in support of its Motion to Dismiss, Defendant argues that, with respect to the ten HuffPost Articles, Plaintiff sued the wrong corporate entity, because HuffPost is operated by TheHuffingtonPost.com, Inc., a corporate subsidiary of Oath, Inc. *See, e.g., Murray v. TheHuffingtonPost.com, Inc.*, 21 F. Supp. 3d 879 (S.D. Oh. 2014) ("TheHuffingtonPost.com [is] a Delaware media company that operates the website The Huffington Post."). However, Defendant did not move to dismiss the case of this ground, but instead reserved the right to assert this argument later in the case if necessary. I have not considered that argument and express no opinion thereon. Because Plaintiff's claims fail for the other reasons stated herein, it is unnecessary to consider this argument.

revisions and deleting references to a lawsuit (now dismissed) that he had brought against the Democratic National Committee. He later dropped the tortious interference claim, leaving only the defamation claim for me to consider. Under that claim, Dr. Page alleges defamation with respect to all eleven Articles.

On September 18, 2020, Defendant filed a Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted under Superior Court Civil Rule 12(b)(6). The parties briefed the motion, and I held Oral Argument on January 27, 2021.

## STANDARD OF REVIEW

Under well settled Delaware law, with respect to a motion to dismiss for failure to state a claim under Delaware Superior Court Rule 12(b)(6), "a trial court must accept as true all of the well-pleaded allegations of fact."[11] "A trial court is not, however, required to accept as true conclusory allegations 'without specific supporting factual allegations.'"[12] In addition, a court must accept "only those 'reasonable inferences that logically flow from the face of the complaint' and 'is not required to accept every strained interpretation of the allegations proposed by the plaintiff.'" [13]

Defendant has asked me to decide whether Plaintiff has stated a claim for defamation against Defendant based on the Articles. For a variety of reasons, discussed

---

[11] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).
[12] *Id.* (citation omitted).
[13] *Id.* (citation omitted).

6

more fully below, I find that he has not.  Therefore, this case must be dismissed for failure to state a claim under Delaware Superior Court Rule 12(b)(6)

## ANALYSIS

### Choice of Law

A preliminary issue is what State's law governs the defamation analysis.  In its Opening Brief in support of its Motion to Dismiss, Defendant argued at some length that New York, rather than Delaware, law governed its tortious interference claim, which was later dropped.  However, Defendant argued that a choice of law analysis is unnecessary for the defamation claims, at least at this stage of the case, because it would not affect the arguments in its Motion to Dismiss.  I agree, and I express no opinion on choice of law.

### The Isikoff Article

### Truth

Plaintiff claims that several statements made in the Isikoff Article are false:

(1) He met with Russian officials Sechin and Diveykin in the Kremlin;

(2) U.S. officials had received intelligence reports of these meetings;

(3) A well-placed Western intelligence source had told Yahoo! News that U.S. officials had received these reports; and,

(4) The author of the Isikoff Article (Michael Isikoff) knew these statements were false, or probably false.

7

However, I find nothing in the Complaint which supports Plaintiff's claims that these statements in the Isikoff Article were false. As a general matter, the article simply says that U.S. intelligence agencies were investigating reports of Plaintiff's meetings with Russian officials, which Plaintiff admits is true, and led to his surveillance for over a year under FISA warrants. The article does not claim that Plaintiff actually met with those officials.

Dr. Page puts particular emphasis on items (2) and (3), above, contending that (a) the Dossier was not an "intelligence report," but rather opposition research, and (b) Steele should not be considered a well-placed Western intelligence source. To me this argument is either sophistry or political spin. An intelligence report is simply a report of information potentially relevant to an investigation. It can take many forms, be true or false, and can be used as opposition research and an intelligence report. Dr. Page also argues that labelling the Dossier an intelligence report suggests that it comes from a governmental agency. None of Dr. Page's descriptions or interpretations of intelligence report meet the standard of what a reasonable person would conclude, which is the standard I must apply.

Additionally, in my view the use of the term "well-placed intelligence source" does not unfairly give credence to the reporting. Again, in my opinion, the description was fair, and did not defame Dr. Page.

Thus, under Delaware law, Plaintiff fails to state a defamation claim based on the

Isikoff Article. None of the allegations in the Complaint shows that the statements in that article are false. A defamation plaintiff must plead "a false and defamatory communication,"[14] and Plaintiff has not done so.

Moreover, under Delaware law, "[i]mmaterial errors do not render a statement defamatory so long as the 'gist' or 'sting' of the statement is true."[15] An article "is substantially true," and therefore not actionable, if the "alleged libel" was no "more damaging to the plaintiff's reputation, in the mind of the average reader, than a truthful statement would have been."[16] Here, the gist of the Isikoff Article is that the U.S. government was investigating possible meetings between Plaintiff and Russian officials. Whether that investigation was confirmed by a well-placed Western intelligence source or based on an intelligence report would make little difference in the mind of the average reader.

### "Fair Reporting" Privilege

Further, because the Isikoff Article is true, it is also protected under the Delaware privilege for fair reports of governmental proceedings. This privilege immunizes "fair and accurate" reports of "governmental" proceedings.[17] Plaintiff admits that he was a

---

[14] *Albright v. Harris*, No. 2019 WL 6711549, at *1 (Del. Super. Ct. Dec. 9, 2019).

[15] *Pazuniak Law Office, LLC v. Pi-Net Int'l, Inc.*, 2016 WL 3742772, at *6 (Del. Super. Ct. July 7, 2016) (citing *Gannett Co. v. Re*, 496 A.2d 553, 557 (Del.1985)); *see also Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991).

[16] *Gannett Co. v. Re*, 496 A.2d 553, 557 (Del. 1985).

[17] *Read v. News-Journal Co.*, 474 A.2d 119, 120 (Del. 1984).

target of the U.S. Government's and the U.S. Congress's investigations.[18]  Because the Isikoff Article provided a fair and accurate report of those proceedings, the fair report privilege applies.  Indeed, a federal court has held that the investigations *were* official government proceedings.[19]  Plaintiff acknowledges that governmental acts of executive officials qualify as official proceedings.  The investigation here was conducted by U.S. intelligence official in the executive branch.  As a fair and accurate report of this investigation, the Isikoff Article is protected.

### The Ten HuffPost Articles

Plaintiff also claims defamation by the ten HuffPost Articles.  Three of the ten HuffPost Articles were original HuffPost content, rather than third-party "contributors."  Seven of the HuffPost Articles were posted by third-party "contributors."  With respect to all ten of the HuffPost Articles, Plaintiff's defamation claim fails for three reasons.

First, as a public figure, Plaintiff fails to allege actual malice by any of the ten individual authors of the HuffPost Articles, instead focusing all his allegations on others.

Second, the three HuffPost Articles authored by HuffPost employees are true.

Third, Defendant is not liable under the federal Communications Decency Act for the seven HuffPost Articles which were posted by third-party "contributors."

---

[18] Am. Compl. ¶ 41.

[19] *Gubarev v. BuzzFeed, Inc.*, 340 F. Supp. 3d 1304, 1317 (S.D. Fla. 2018), appeal dismissed, No. 19-10837-JJ, 2019 WL 4184055 (11th Cir. Apr. 24, 2019).

## Public Figure

Public figures face a "heightened pleading standard" in defamation cases.[20] "There are two types of public figures: all-purpose and limited-purpose."[21] An all-purpose public figure "achieve[s] such pervasive fame or notoriety that he becomes a public figure for all purposes," while a limited-purpose public figure "injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues."[22] "The question of whether a plaintiff is a public figure is 'one of law, not of fact.'"[23]

Plaintiff was at least a limited-purpose public figure when the HuffPost Articles were published. I take judicial notice[24] of the fact that on March 21, 2016, six months before the first HuffPost Articles, presidential candidate Donald Trump named Plaintiff as one of five members of his "foreign policy team."[25] Days later, Plaintiff discussed his Russian ties in a two-hour interview with Bloomberg.[26] He therefore "inject[ed] himself"

---

[20] *Agar v. Judy*, 151 A.3d 456, 477 (Del. Ch. 2017).

[21] *Id.*

[22] *Id.* (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)).

[23] *Id.*, at 477 (citation omitted).

[24] *Judy v. Preferred Communication Systems, Inc.*, 2016 WL 4992687 (Del. Ch. Sept.19, 2016), at *2 (authorizing "judicial notice, in a motion to dismiss context, of documents of public record" (citation omitted)).

[25] Am. Compl. Ex. 1 at 2–3 (linking to Post Opinions Staff, *A transcript of Donald Trump's meeting with The Washington Post editorial board*, Wash. Post (Mar. 21, 2016), https://www.washingtonpost.com/blogs/postpartisan/wp/2016/03/21/a- transcript-of-donald-trumps-meeting-with-the-washington-post- editorialboard/?utm_term=.a7b86fdc7173). *See also* Am. Compl. ¶ 14 (admitting that he was a foreign policy advisor to President Trump's 2016 campaign).

[26] Zachary Mider, *Trump's New Russia Advisor Has Deep Ties to Kremlin's Gazprom*, BLOOMBERG (Mar. 30, 2016), https://www.bloomberg.com/news/articles/2016-03-30/trump-russia-adviser- carter-

into any public controversy relating to the Trump campaign, particularly one concerning Trump's connections to Russia. Thus, in my view, Plaintiff is a public figure.

## Actual Malice

As a public figure, Dr. Page must both plead and prove that the allegedly defamatory statements were made with "actual malice;" i.e., the speakers "knew [each] statement was false or acted with reckless disregard for the truth."[27] This is a "subjective" standard requiring "a high degree of... awareness of probable falsity."[28] Moreover, Plaintiff must plead that the individual authors of the HuffPost Articles acted with actual malice. Organizations like Defendant cannot have institutional knowledge of falsity. Actual malice must be "brought home to the persons . . . having responsibility for the [allegedly defamatory] publication."[29] Further, Plaintiff must plead facts that permit that conclusion. "A trial court is not . . . required to accept as true conclusory allegations 'without specific supporting factual allegations.'"[30]

Unlike the Isikoff Article, Plaintiff does not allege facts about any of the individual authors of the HuffPost Articles. He asserts only that Defendant acted with actual malice.[31] Plaintiff also asserts that Defendant's former CEO, Tim Armstrong,

page-interview).
[27] *Agar*, 151 A.3d at 477 (citing *Doe v. Cahill*, 884 A.2d 451, 463 (Del. 2005)).
[28] *Harte- Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (citation omitted).
[29] *New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964).
[30] *Hughes*, 897 A.2d at 168.
[31] Am. Compl. ¶¶ 9, 106–110, 116.

12

"professionally supported" Hillary Clinton, and that "on his watch, HuffPost posted a statement on it[s] website . . . that said, 'Trump is a serial liar who incites violence.'"[32]

Plaintiff fails to state a claim for defamation because the only facts he pleads concern people other than the authors of the HuffPost Articles. Setting aside bare legal conclusions, "political opposition alone does not constitute actual malice,"[33] and, even if it did, these allegations say nothing about the state of mind of the authors of the HuffPost Articles.

Plaintiff also claims that the Dossier was "inherently improbable" or contained statements that "could easily be exposed as false if fact-checked."[34] However, it is well established that "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard."[35] Moreover, none of the HuffPost Articles reported on the Dossier as established fact. Plaintiff himself says that "[a]t most, the Steele Dossier contained some potential leads to pursue."[36] Similarly, all that the HuffPost Articles stated is that investigators were pursuing leads.

Even if Plaintiff could avoid his fatal failure as a public figure to plead actual malice, his claim would still fail with respect to all ten of the HuffPost Articles. The three HuffPost Articles authored by HuffPost employees are true, and Defendant

---

[32] *Id.* ¶ 116.
[33] *Palin v. N.Y. Times Co.*, 940 F.3d 804, 814 (2d Cir. 2019).
[34] Am. Compl. ¶ 74.
[35] *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989).
[36] Am. Compl. ¶ 75.

cannot be liable for the seven HuffPost Articles authored by third-party "contributors" under Section 230 of the Communications Decency Act.

**Truth of the Three HuffPost Articles Authored by HuffPost Employees**

Setting aside these seven Huff Post Articles authored by "contributors," the remaining three HuffPost Articles are all true.

The first of these Articles, dated September 25, 2016, is titled "Trump Campaign: That Adviser Reportedly Talking with Russian Officials Isn't an Adviser Anymore." According to Plaintiff, this Article "republished" many of the statements in the Yahoo Article. Like the Yahoo Article, this first Article only states that officials had received reports of Plaintiff's alleged meetings.[37] The title refers to Dr. Page as "That Advisor Reportedly Talking with Russian Officials."[38] As in the Yahoo Article, this Article makes clear that these reports had not been confirmed.[39] "Carter Page ... reportedly has had discussions with senior Russian officials ... ."[40] "Members of Congress have been briefed on Page discussing sanctions relief with Russia, Yahoo News reported Friday."[41] "If Page is in talks with Russian officials . . . ."[42] This first HuffPost Article is therefore true for the reasons discussed with respect to the Yahoo Article earlier in this opinion.

The second of these Articles, dated May 22, 2017, mostly concerns General

---

[37] Am. Compl. Ex. 2.
[38] *Id.* at 1.
[39] *Id.*
[40] *Id.*
[41] *Id.* at 2.
[42] *Id.*

14

Michael Flynn, but contains one statement about Plaintiff: that the Senate Intelligence Committee had requested documents from Plaintiff, who was so far refusing to cooperate. This second article is true also. Contrary to Plaintiff's assertion, this second Article does not say or suggest that Plaintiff was "obstructing a congressional investigation."[43] It states only that, at the time of publication, Plaintiff was "so far refusing to cooperate" with document requests from the Senate Intelligence Committee.[44] Dr. Page claims this is false because he did "offer[] significant cooperation and a substantial quantity of documents."[45] But he does not say he had done so at the time this article was published.[46] The qualifier "so far" conveyed that Dr. Page still had time to produce the requested documents. Readers would not conclude that Dr. Page's permissible delay was "obstructing a congressional investigation."[47] Thus this second Article is true.

The third of these Articles, dated May 19, 2017, also makes a statement about Plaintiff: questioning why Trump continues to stand by Flynn despite denouncing his ties to Paul Manafort and Carter Page. Plaintiff simply misquotes the third Article.[48] Plaintiff claims that "President Trump never 'denounced' Dr. Page."[49] But this third

---

[43] Am. Compl. Ex. 2 and ¶ 54.
[44] Am. Compl. Ex. 5 at 2.
[45] Am. Compl. ¶ 54.
[46] *Id.*
[47] *Id.*
[48] Am. Compl. Ex. 9.
[49] Am. Compl. ¶ 59.

Article only says that Trump "denounce[d] his ties" to Page."[50]  Trump's campaign manager said Plaintiff was "no longer an adviser."[51]  Plaintiff does not dispute this fact, and admits "he was unable to contribute any material assistance" to the Trump campaign.[52]  Thus this third Article is true.

## Immunity of Defendant under Section 230

Seven of the HuffPost Articles were authored by third-party "contributors."[53]  As Plaintiff has acknowledged in another forum, HuffPost warned when these Articles were posted that it is "not responsible for . . . the opinions expressed by content contributors."[54]

Section 230 of the federal Communications Decency Act ("Section 230") immunizes websites from liability for the unlawful speech of third parties.  "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."[55]  This immunity "prevent[s] lawsuits from shutting down websites,"[56], because "[t]he specter of tort liability in an area of such prolific speech would have an obvious chilling effect."[57]

Section 230 expressly preempts Delaware law.  "No cause of action may be

---

[50] Am. Compl. Ex. 9 at 2.

[51] Am. Compl. Ex. 2 at 1.

[52] Am. Compl. ¶ 48.

[53] Am. Compl. Ex. 2 (authored by "Brad Schreiber, Contributor"); Exs. 4, 6–8, 10–11.

[54] SDNY Compl. ¶ 126 (quoting HuffPost Terms of Service).

[55] 47 U.S.C. § 230(c)(1).

[56] *Batzel v. Smith*, 333 F.3d 1018, 1027–28 (9th Cir. 2003), *reh'g denied by* 351 F.3d 904, (9th Cir. 2003).

[57] *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997).

brought and no liability may be imposed under any State or local law that is inconsistent with this section."[58]

Importantly, Section 230 grants "immunity from suit rather than a mere defense to liability."[59] Courts therefore apply Section 230 "at the earliest possible stage of the case," often on a motion to dismiss as in this case, because such immunity would be "effectively lost" if defendants were subject to costly litigation.[60]

Section 230 bars suit where (1) the defendant provides an "interactive computer service"; (2) the complained-of statements were made by "another information content provider"; and (3) the claim "seek[s] to treat the defendant as a publisher or speaker of [that] third party content."[61] Here, all three of these elements are satisfied.

First, HuffPost provides an "interactive computer service," which is defined as an "information service . . . that provides or enables computer access by multiple users to a computer server."[62] Courts have "adopt[ed] a relatively expansive definition of 'interactive computer service.'"[63] "[T]he most common interactive computer services are websites."[64] "Websites [that publish third party content] are under the umbrella of

---

[58] 47 U.S.C. § 230(e)(3).

[59] *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254–55 (4th Cir. 2009).

[60] *Id.* at 254. *See also, e.g., AdvanFort Co. v. Cartner*, No. 1:15-cv-220, 2015 WL 12516240, at *5 (E.D. Va. Oct. 30, 2015); *M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1058 (E.D. Mo. 2011); *Gibson v. Craigslist, Inc.*, No. 08 Civ. 7735, 2009 WL 1704355, at *5 (S.D.N.Y. June 15, 2009). ·

[61] *Gibson*, 2009 WL 1704355, at *3.

[62] 47 U.S.C. § 230(f)(2).

[63] *Carafano*, 339 F. 3d at 1123; *see also Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 501 n.6 (E.D. Pa. 2006) (same).

[64] *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (citation omitted).

protection of Section 230."[65]

Second, HuffPost was not the "information content provider" for these seven Articles. That is because Section 230 "protects websites from liability . . . for material posted on their websites by someone else."[66] This is true regardless of whether HuffPost exercised "traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content."[67] Indeed, such conduct is precisely what Section 230 was designed to protect.[68] "[A] central purpose of the Act was to protect from liability service providers and users who take some affirmative steps to edit the material posted."[69]

Third, Plaintiff clearly seeks to hold Defendant liable as the publisher or speaker of this third-party content. Both of his claims depend on Defendant having "made" or "published" the relevant statements.[70]

At Oral Argument, Dr. Page claimed for the first time that Defendant had no Section 230 protection and was responsible for the publication of the seven HuffPost contributor articles as if they were Defendant's original content. This argument ignores, and does not comport with, Defendant's process of expressly noting that the authors of the articles were contributors, and it was not responsible for the content. In its publication, Defendant told readers that the articles were written by contributors who

---

[65] *Collins v. Purdue Univ.*, 703 F. Supp. 2d 862, 878 (N.D. Ind. 2010).

[66] *Perlman v. Vox Media, Inc.*, 2020 WL 3474143, at *2 n.24 (Del. Super. Ct. June 24, 2020).

[67] *Dowbenko v. Google Inc.*, 582 F. App'x 801, 805 (11th Cir. 2014) (quoting *Zeran*, 129 F.3d at 330).

[68] *Id.*

[69] *Batzel*, 333 F.3d at 1031.

[70] *See, e.g.*, Am. Compl. ¶¶ 144, 147, 160–61.

control their own work and post freely to the site.

This is not a controversial application of Section 230. The law was designed to foster a "true diversity of political discourse."[71] By allowing third parties to comment on an issue of immense political concern, HuffPost did just that. With respect to these seven articles, all three elements of Section 230 are satisfied, and Dr. Page's claim must be dismissed.

For the reasons stated above, I **GRANT** Defendant's Motion to Dismiss for Failure to State a Claim. This case is dismissed.

**IT IS SO ORDERED.**

Craig A. Karsnitz

cc: Prothonotary

FILED PROTHONOTARY SUSSEX COUNTY 2021 FEB 11 P 2: 15

---

[71] 47 U.S.C.A. § 230(a)(3).